688 A.2d 1044

MARC GELBER AND MARLENE GELBER, PLAINTIFFS–APPEL-
LANTS, v. THE ZITO PARTNERSHIP, A PARTNERSHIP CON-
SISTING OF MATTHEW R. ZITO AND DANIEL FALCONE,
DEFENDANTS–RESPONDENTS.

DANIEL FALCONE, ARCHITECT, PLAINTIFF, v. MARC GELBER
AND MARLENE GELBER, DEFENDANTS.

Argued December 2, 1996—Decided February 27, 1997.

*James G. Aaron* argued the cause for appellants (*Ansell, Zaro, Grimm & Arron*, attorneys).

*Andrew J. Carlowicz* argued the cause for respondent Daniel Falcone (*Hoagland, Longo, Moran, Dunst & Doukas*, attorneys; *Thomas S. McGuire*, on the brief).

*Lewis M. Markowitz* argued the cause for respondent Matthew R. Zito (*Epstein, Epstein, Brown & Bosek*, attorneys; *Andrew M. Epstein*, on the brief).

The opinion of the Court was delivered by

O'HERN, J.

This appeal, like *Joel v. Morrocco*, 147 *N.J.* 546, 688 *A.*2d 1036 (1997), also decided today, concerns an application of the entire controversy doctrine. We apply the principles there stated to the disposition of this appeal.

In this case, we hold that it was error to dismiss all allegations of a homeowner's current suit for professional malpractice against an architect on the basis that the homeowner had failed to inform the court that it had previously made a claim in arbitration against the general contractor for defective construction of the home designed by the architect. We remand to the Law Division to determine the extent to which the facts giving rise to the claims against the architect might fairly be considered distinct from the

facts giving rise to the claims against the contractor, such that claims based on any distinct facts so considered would not be subject to or barred by the entire controversy doctrine. For purposes of this appeal, we adopt the version of the case set forth in the architect's Appellate Division brief.

In August 1991, plaintiff filed a complaint against a former architectural firm, the Zito Partnership, and its two principals, Matthew R. Zito and Daniel Falcone (the architect).[1] At the time the plaintiff filed its complaint against the architect, plaintiff certified, pursuant to *Rule* 4:5–1(b)(2): "There are no other matters in controversy other than the matter of Daniel Falcone, architect, v. Marc Gelber and Marlene Gelber." At that time, the certification was true. In July 1993, the architect took the deposition of an expert witness for the homeowner. (We refer to the husband and wife plaintiffs-homeowners in the singular.) During this deposition, the architect first learned that the homeowner had brought a separate claim in a May 1992 arbitration proceeding against Elecon Builders (the contractor). Elecon had been hired for the renovations that were the subject of the 1991 suit against the architect. That arbitration proceeding had actually been commenced by the contractor against the homeowner in May 1992 and the homeowner had counterclaimed in arbitration for defective performance.

In October 1992, an arbitrator had entered an award in favor of the homeowner against the contractor and awarded $113,775 in damages, which, after credits to the contractor, resulted in a final award of $58,390. The contractor would not pay the arbitration award and, pursuant to the arbitration statute, the homeowner brought a summary action to confirm the arbitration award in November 1992. In connection with that arbitration proceeding, which the contractor opposed on the basis that the architect was

---

[1] Actually, the architect had sued the homeowner in the Special Civil Part for nonpayment in May 1991. The Superior Court consolidated the architect's action with the August 1991 complaint filed by the homeowner in the Law Division.

responsible for some of the damages, the attorney for the homeowner (now counsel in both matters) again recited that the matter in controversy "is not the subject of any other pending action in any court."

The contractor's affidavit in opposition to the confirmation action disputed the arbitration award and also complained that it had been "undisclosed" to him until after the arbitration proceeding that the homeowner had brought a lawsuit against the architect. The contractor made specific reference to a dispute concerning the faulty design of kitchen windows, claiming that this was the fault of the architect. The homeowner had contended in the arbitration that the faulty design was the responsibility of the contractor.

After learning of these arbitration proceedings, the architect obtained a copy of the arbitration report submitted by the homeowner's expert witness. The architect took another deposition of the expert witness and, with this added information, moved to dismiss the complaint in the Law Division, alleging that the homeowner was attempting to "double dip" in violation of the entire controversy doctrine. The architect alleged that the homeowner had violated *Rule* 4:5–1(b)(2), which places a continuing duty on litigants to notify the parties and the court of any other pending litigation or arbitration proceeding.

The Law Division granted that motion. The court concluded that because the homeowner failed to join the contractor in the current suit against the architect and failed to notify the court and architect of the course of the arbitration, the homeowner violated the entire controversy doctrine and could not proceed against the architect in this matter.

The Appellate Division affirmed. It ruled that even if the homeowner had not yet formulated the extent of the claims against the contractor prior to entering the arbitration action, the homeowner "should have informed defendant and the court of the arbitration proceeding as required by *Rule* 4:5–1(b)(2). The failure to do so is a bar to this action." One member of the panel

joined the majority as to the claims that pertained to the defects involving the contractor that the architect had the duty to supervise, but dissented with respect to claims against the architect that dealt with improper design, as well as malpractice relating to improper identification and designation of the property and the elevations. "These have nothing to do with the claims that involved Elecon." The homeowner appeals to us as of right under *Rule* 2:2–1(a).

We begin by restating the obvious: The twin pillars of the entire controversy doctrine are fairness to the parties and fairness to the system of judicial administration. *Joel v. Morrocco, supra,* 147 *N.J.* at 555, —— *A.*2d at 1041. The Court did not intend that violation of the notice requirements of *Rule* 4:5–1 should result in automatic orders for dismissal. Courts must carefully analyze each of the pillars of the doctrine before dismissing claims or parties to a suit.

In considering fairness to the party whose claim is sought to be barred, a court must consider whether the claimant has "had a fair and reasonable opportunity to have fully litigated that claim in the original action." *Cafferata v. Peyser,* 251 *N.J.Super.* 256, 261, 597 *A.*2d 1101 (App.Div.1991). The homeowner argues that he could not have pressed the claim against the architect in an arbitration. After all, the entire controversy doctrine is not part of arbitral practice. (The powers of an arbitrator are strictly limited by the terms of the arbitration agreement.) Further, the homeowner argues that the trial court could not have ordered consolidation of the two proceedings because the architect had waived the right to arbitration, and because the arbitration between the contractor and homeowner was limited in scope. In point of fact, the architect, if informed of the arbitration with the contractor, might have chosen to invoke the arbitration clause in its own contract. In that circumstance, a court might have ordered consolidation of the two arbitrations. *Manchester Tp. Bd. Of Educ. v. Thomas P. Carney, Inc.,* 199 *N.J.Super.* 266, 279, 489 *A.*2d 682 (App.Div. 1985).

We need not decide whether, if informed of the pending arbitration, the trial court could have required joinder in either forum. The notice requirements of *Rule* 4:5–1 require conduct on the part of attorneys for reasons not limited to joinder of actions. Joinder is but one goal of the entire controversy doctrine. Quite aside from joinder of the controversies in either the arbitral or judicial forum, a trial court, once informed of related actions, can employ various procedural tools to prevent excessively complicated or unfair litigation. *See Zirger v. General Accident Ins. Co.*, 144 *N.J.* 327, 676 *A.*2d 1065 (1996) (authorizing modification of arbitration agreement to limit duplicative litigation). The court could have taken measures to clarify the case before it through stipulations, authorizing discovery relating to the nature of the claims being addressed in the arbitration proceedings (including the extent to which the claims overlapped or paralleled those in the judicial proceedings), and the extent to which witnesses and evidence would be the same in both proceedings. It could have considered the applicability of collateral estoppel in respect of factual determinations bearing on the claims and defenses of the respective parties. The court could have required the homeowner to obtain a transcript of the arbitration hearing and to provide it to the architect and the court in the judicial proceeding. It could have further entertained applications to stay one or the other proceeding to assure consistent results in both proceedings. Even if the trial court could not have controlled the disposition of the arbitration, it could have sought to foster mediation among the parties.

At a minimum, therefore, the homeowner's failure to give notice deprived both the architect and the court of the opportunity to have the Superior Court manage or otherwise coordinate the two proceedings. Hence, we agree that on this record there has been a sufficient showing of prejudice to the architect, resulting from violation of the notice requirements of *Rule* 4:5–1, to warrant a measured application of the entire controversy doctrine.

Obviously, there is harm to the homeowner if valid claims against the architect were to be dismissed, but this harm was

avoidable by the homeowner. The homeowner employed the same expert witness in both proceedings. Although counsel argued that he was not aware of the pending arbitration proceeding, he was at least on notice that the homeowner had requested the services of an expert and thus counsel had sufficient reason to believe that another claim was pending. Counsel surely knew that another action was pending when he filed the confirmation action in December 1992; by that time, the homeowner and the same attorney had been in litigation with the architect for over a year, and the homeowner had received the judgment in the arbitration proceeding two months earlier.

Before us the homeowner readily acknowledged prejudice to the architect in the pursuit of claims that were intertwined with the construction defects. The entire controversy doctrine therefore precludes assertion of these claims in a subsequent proceeding. The homeowner, however, insists that there are other design claims that are separate and distinct from the factual predicate for the claims for construction defects. The narrow question is whether violation of *Rule* 4:5–1(b)(2) requires a dismissal under *Rule* 4:30A of those claims against the architect based on facts or sets of facts different from those dealt with in the earlier proceeding. We agree that violations of the *Rule* are not to be regarded as mere technicalities for which dismissal would always be inappropriate. *DiTrolio v. Antiles,* 142 *N.J.* 253, 277, 662 *A.*2d 494 (1995). Nor do such violations mandate dismissal in all circumstances. Rather, the *Rule* is designed to implement the entire controversy doctrine, not to contain its essence.

As the dissenting member of the Appellate Division observed: "The doctrine is not to be used as a means of calendar clearance. Rather, it is to promote fairness through providing a single, economic and efficient forum for litigating controversies." The purpose of the rule is not just to notify a new party of the imminence of a future lawsuit; the purpose of the rule is to secure the coordination and consolidation of all litigation emanating from a single controversy through the joinder of all participants in that

controversy in a current action and to subject joinder issues to the supervisory authority of the court. *DiTrolio, supra,* 142 *N.J.* at 277, 662 *A.*2d 494. Thus, even if joinder could not occur, the architect was sufficiently prejudiced that it would be unfair to permit all allegations of the current suit to go forward against it.

█ Counsel for the architect urges us to adopt a rule of automatic dismissal whenever any violation of the *Rule* occurs, because prejudice always results. We cannot agree that an arbitration with a contractor over instances of faulty construction always requires dismissal of an homeowner's suit that alleges major design deficiencies against an architect. A dispute with a contractor, for example, over the color of a kitchen cabinet ought not result in the dismissal of a suit against an architect alleging mislocation of a structure. Dismissal is only appropriate when the claims in the action against the architect are derived from facts also forming the basis for the suit against the contractor. As in every application of the entire controversy doctrine, courts must carefully examine the three aspects of fairness. *Joel, supra,* 147 *N.J.* at 548–50, 688 *A.*2d at 1038.

In this case, the arbitration with the contractor covered much common ground with the litigation against the architect. On remand, the court must assess the extent to which the homeowner's claims in this suit against the architect will in any way implicate the facts and claims involving both the architect and the contractor. It is readily apparent that many claims do implicate the conduct of both the contractor and the architect. For example, the expert's report prepared for the homeowner in the arbitration proceeding alleged as a deficiency against the contractor the fact that a floor was constructed out of level. The report of the same expert, prepared for the lawsuit, alleged as a deficiency that the construction documents did not address the fact of several out-of-level floor problems. We surmise that there are few claims that will not fall into this category of overlapping responsibility—either failure on the part of the contractor to

follow up with the architect or an expectation on the part of the architect that the as-built work would be satisfactory.

Because of the double violation of *Rule* 4:5–1, in failing to inform the Superior Court that the other action was pending in either the confirmation suit or the suit against the architect, the homeowner must bear the added burden of dispelling any possibility of prejudice. To that end, the homeowner shall submit to the Law Division clear specifications of allegedly surviving claims that do not in any way involve the work of the general contractor and the dollar amounts claimed therefor. The architect may present to the court counter-proofs. If a reasonable fact finder could find that there was overlapping responsibility for the work, the court should dismiss any of those claims before trial and permit the case to proceed only as to those claims against the architect that are entirely factually separable from claims related to work performed by the contractor. Because we anticipate there will be few such claims, there will be little burden to the court in their disposition.

The judgment of the Appellate Division is reversed. The matter is remanded to the Law Division for proceedings consistent with this opinion.

*For reversal and remandment*—Chief Justice PORITZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—None.