696 A.2d 659

MARY E. KARPOVICH, PLAINTIFF–APPELLANT, v. JOHN M. BARBARULA AND JOSEPH AFFINITO, DEFENDANTS–RESPONDENTS.

Argued February 3, 1997—Decided July 16, 1997.

474

*H. Curtis Meanor* argued the cause for appellant (*Podvey, Sachs, Meanor, Catenacci, Hildner & Cocoziello,* attorneys; *Mr. Meanor* and *Amy B. Wagner,* on the briefs).

*Peter A. Ouda* argued the cause for respondent John M. Barbarula (*Voorhees & Acciavatti,* attorneys).

*Christopher J. Carey* argued the cause for respondent Joseph Affinito (*Tompkins, McGuire & Wachenfeld,* attorneys; *Richard F. Connors, Jr.,* and *Mary Anne McConeghy,* on the brief).

*Andrew P. Napolitano* argued the cause for *amicus curiae*, New Jersey State Bar Association (*Cynthia M. Jacob, President,* attorney; *Linda Lashbrook,* on the brief).

The opinion of the Court was delivered by

POLLOCK, J.

The issue is whether the entire controversy doctrine precludes plaintiff, Mary E. Karpovich, from pursuing this attorney-malpractice action because of her failure to join defendants, John M. Barbarula and Joseph Affinito, in a prior action involving a transaction in which they allegedly were her attorneys. That action ended with the entry of a consent judgment.

In July 1992, Karpovich delivered $397,000 to an investment counselor, James Burgio, to invest on her behalf. Burgio loaned part of the money to Our Gang, Inc. ("Our Gang") and converted the rest of the money for his personal use. Our Gang subsequently defaulted on the loan. Karpovich and Burgio signed a settlement agreement in which Burgio agreed to repay the $397,000. They secured the settlement with the entry of a consent judgment. Burgio became insolvent. Karpovich then filed this legal-malpractice action against defendants.

The Law Division granted defendants' motion for summary judgment on entire-controversy grounds. The Appellate Division affirmed in an unreported opinion. We granted Karpovich's petition for certification, 146 *N.J.* 565, 683 *A.*2d 1161 (1996), and now reverse.

We hold that the settlement of the underlying action did not sufficiently involve the use of judicial resources to invoke the entire controversy doctrine as a bar to this legal-malpractice action. As in *Olds v. Donnelly,* 150 *N.J.* 424, 696 *A.*2d 633 (1997), also decided today, the entire controversy doctrine does not compel either notice to the trial court of the possible legal-malpractice claim or the joinder of the attorney in the underlying action that gives rise to that claim.

### I.

The facts are undisputed. In July 1992, Karpovich delivered $397,000 to Burgio to invest. Burgio represented to Karpovich that he was a "Certified Estate and Business Analyst." He loaned $66,000 to Our Gang. At the time of the loan, defendants maintained separate law offices, but shared office space. Karpovich claims that defendants performed legal work for her in connection with the Our Gang loan.

Our Gang defaulted on the loan and filed for Chapter 11 bankruptcy. Burgio converted the remainder of Karpovich's money for his personal use.

In October 1993, Karpovich's attorney wrote to Barbarula accusing him of legal malpractice in the Our Gang loan and demanding that Barbarula forward the letter to Barbarula's malpractice insurance carrier.

In January 1994, Karpovich and Burgio entered a written agreement settling Karpovich's claims against Burgio. In the agreement, Burgio admitted that he misappropriated Karpovich's funds for his personal use. Burgio, having already paid Karpovich $100,000, promised in the agreement to pay the remaining $297,-000, together with interest, counsel fees, and costs. He also agreed to entry of a consent judgment. The settlement agreement further provided that Burgio would cooperate with Karpovich "with respect to her collection of amounts due from Edward Scully and John Kemp, the principals of Our Gang, Inc. and with respect to [Karpovich's] pursuit of a malpractice action against John M. Barbarula, Esq. with respect to the Our Gang transaction."

On February 25, 1994, Karpovich filed a complaint against Burgio in the Law Division alleging breach of contract, breach of fiduciary duty, wilful misconduct and breach of good faith and fair dealing. As required by *Rule* 4:5–1(b)(2), Karpovich's attorney asserted that no other proceeding was contemplated and that he was unaware of any other party to be joined.

Seven days later, on March 3, 1994, the Law Division entered a consent judgment against Burgio. Karpovich does not dispute that the judgment against Burgio includes the damages she suffered as a result of defendants' alleged malpractice, the value of the loan to Our Gang. Karpovich could not collect on the judgment against Burgio.

On August 26, 1994, she instituted the present malpractice suit against defendants. Karpovich alleges that defendants, at the request of Burgio, undertook to represent her in the loan to Our Gang. According to Karpovich's complaint, defendants failed to prepare a security agreement and to timely file financing statements. In addition, Karpovich asserts that defendants failed to obtain the signature of a tenant by the entirety on one of the mortgages securing the loan and that they did not properly record the mortgages. She maintains that the defendants breached their contractual obligations as well as their duties of care, good faith, and loyalty.

Defendants moved for summary judgment, arguing that Karpovich either should have joined them in the Burgio suit or should have notified the Law Division of her claims against them. Karpovich claimed that Burgio's suit was filed "only to effectuate a judgment." She also argued that defendants had no material interest in the Burgio suit because the two cases were separate. Finally, she stated that defendants have not suffered any prejudice.

At oral argument, the trial court commented that the provision in the settlement agreement with Burgio that specifically required Burgio to assist Karpovich in a malpractice action "clinch[ed] defendants'] case." According to the court, because Karpovich knew that she was splitting the actions, dismissal was fair. The court noted that it was "abundantly clear that judicial economy would have suggested to [Karpovich to] bring all the claims in one litigation." Consequently, the court granted defendants' motion for summary judgment dismissing all claims with prejudice. The Appellate Division affirmed. It held that although Karpovich's

claim against Burgio and defendants differed, the underlying facts were interrelated. The court emphasized that Karpovich conceded that the terms of the Burgio settlement included the amount in controversy in the present action. According to the court, Karpovich should have joined defendants in the Burgio suit because they had a "significant interest" and were "materially affected" by the settlement.

The court reasoned that the application of the entire controversy doctrine was fair because Karpovich knew of her malpractice claim against defendants before she sued Burgio. In addition, the court stated that "plaintiff's intent to split the litigation is obvious."

The Appellate Division further held that Karpovich prejudiced defendants by failing in the Burgio action to inform the Law Division of her claim against them. That failure, according to the Appellate Division, deprived defendants of the opportunity for discovery and of asserting a cross-claim for contribution against Burgio. The court reasoned that because Burgio is now judgment proof, defendants' attempt to assert such a claim would be unavailing.

The court recognized that the Burgio action had not imposed a burden on the judiciary and that the action's sole purpose was to secure a consent judgment. Consequently, it acknowledged that application of the entire controversy doctrine would not advance judicial efficiency. The court, however, held that this factor alone "does not vitiate the force of the doctrine and the need for its enforcement in view of the other factors justifying its application." It reasoned that Burgio's consent to the judgment was irrelevant in light of Karpovich's failure to notify the trial court of her intention to pursue a malpractice action against defendants. That failure, according to the Appellate Division, prejudiced defendants. In sum, the Appellate Division found that Karpovich had deprived the Law Division in the Burgio action of the opportunity to consider joinder of defendants.

## II.

As set forth in *Olds v. Donnelly,* the purposes of the entire controversy doctrine are to promote a complete determination of a matter, to avoid prejudice to absent parties, and to promote judicial economy. *Olds, supra,* 150 *N.J.* at 431, 696 *A.2d* at 637. Thus, the goals of the doctrine remain fairness to the parties and fairness to the system of judicial administration. *Joel v. Morrocco,* 147 *N.J.* 546, 555, 688 *A.2d* 1036 (1997); *Prevratil v. Mohr,* 145 *N.J.* 180, 197, 678 *A.2d* 243 (1996).

*Rule* 4:5–1(b)(2) facilitates those goals by requiring each party to certify with its first pleading whether the matter in controversy is the subject of any pending litigation. "Further, each party shall disclose in the certification the names of any other party who should be joined in the action." *R.* 4:5–1(b)(2). Throughout the proceeding, moreover, the parties have a continuing obligation to amend their certification.

The Appellate Division barred Karpovich's legal-malpractice action because she failed to notify the trial court of her claims against defendants or to join them in her action against Burgio.

We conclude, however, that the entire controversy doctrine should not bar Karpovich's legal-malpractice action. In reaching this conclusion, we acknowledge that the Burgio suit and this legal-malpractice action stem from the same set of facts. *See DiTrolio v. Antiles,* 142 *N.J.* 253, 271, 662 *A.2d* 494 (1995) (finding that to determine whether entire controversy applies primary consideration "is whether distinct claims are aspects of a single larger controversy because they arise from interrelated facts"). The loan to Our Gang is the subject of this attorney-malpractice action. Karpovich sued Burgio for conversion of funds amounting to $397,000, $66,000 of which involved the loan to Our Gang. As the Appellate Division found, the loan to Our Gang was a "constituent part" of the action against Burgio. Karpovich admits that part of the relief that she seeks against defendants is the same

relief that she sought against Burgio, recovery of the $66,000 loan to Our Gang.

Moreover, Karpovich knew of her legal-malpractice claims against defendants when she filed her complaint against Burgio in the Law Division. *See id.* at 273–74, 662 *A.*2d 494 (finding that entire controversy doctrine does not apply to claims that are "unknown, unarisen, or unaccrued" at time of original action). Before she settled with Burgio and filed her action for a consent judgment in February 1994, Karpovich knew of Barbarula's role in the Our Gang loan. In October 1993, Karpovich's attorney had written to Barbarula accusing him of legal-malpractice in connection with the Our Gang loan. Additionally, the January 1994 settlement agreement provided that Burgio would assist Karpovich "with respect to her pursuit of a malpractice action against John M. Barbarula, Esq. with respect to the Our Gang transaction."

■ When considering fairness to the party against whom the entire controversy doctrine is invoked, however, we must consider whether or not the party had a "fair and reasonable opportunity to have fully litigated that claim in the original action." *Cafferata v. Peyser*, 251 *N.J.Super.* 256, 261, 597 *A.*2d 1101 (App.Div.1991). Thus, we have found that an initial action in lieu of a prerogative writ challenging the issuance of a zoning approval did not preclude a subsequent action for enforcement of a money settlement. *Joel, supra*, 147 *N.J.* at 547, 688 *A.*2d 1036. In addition, the Appellate Division has refused to bar a subsequent action when the first action was a small collection suit brought pro se in the Special Civil Part with no judge involved. *Cafferata, supra*, 251 *N.J.Super.* at 261–63, 597 *A.*2d 1101.

The settlement of Karpovich's claim with Burgio and the subsequent consent judgment did not afford Karpovich an adequate opportunity to litigate her malpractice claims against Barbarula and Affinito. Only seven days transpired between the filing of the Burgio action and the entry of a consent judgment. The consent judgment thus involved virtually no judicial resources. Judicial

involvement was so minimal as not to warrant the invocation of the entire controversy doctrine. The entry of the consent judgment was like a settlement with a release. Preclusion of Karpovich's legal-malpractice action against defendants simply does not advance the entire controversy's central role of promoting judicial economy and efficiency.

Application of the entire controversy doctrine to bar Karpovich's claims, moreover, would undermine the public policy favoring settlements. *See, e.g., Nolan v. Lee Ho*, 120 *N.J.* 465, 472, 577 *A.*2d 143 (1990) (reasoning that settlement of litigation ranks high in New Jersey's public policy). In *DiTrolio*, we considered the interplay between the entire controversy doctrine and settlements. We reasoned that when a party accepts a settlement offer, the process of joining additional parties ends. *DiTrolio, supra*, 142 *N.J.* at 278, 662 *A.*2d 494. Consequently, "the invocation of the single controversy doctrine to bar a plaintiff's subsequent action against a party who was not joined prior to the settlement of the original action may unfairly preclude a plaintiff from pursuing all claims against all responsible parties" and may "discourage a plaintiff who conceives that there may be other responsible parties from settling." *Id.* at 278–79, 662 *A.*2d 494 (quoting *DiTrolio v. Antiles*, 276 *N.J.Super.* 234, 254, 647 *A.*2d 1318 (App.Div.1994) (Skillman, J. concurring) (citation omitted)).

On the facts of *DiTrolio*, we nevertheless held that the entire controversy doctrine barred the plaintiff's second action. *Ibid.; see also Circle Chevrolet, supra*, 142 *N.J.* at 287–88, 662 *A.*2d 509 (applying doctrine when first suit tried but ultimately settled). Crucial to our holding were the facts that the first action, which involved numerous parties, attorneys, and witnesses was vigorously litigated and involved a year of extensive discovery. *DiTrolio, supra*, 142 *N.J.* at 278, 662 *A.*2d 494.

No such waste of judicial resources occurred in Karpovich's action against Burgio. Indeed, Karpovich and Burgio never engaged in any discovery. The sole purpose of the action was to obtain a consent judgment as a means of securing a settlement.

Unlike the plaintiffs in *DiTrolio,* Karpovich did not engage in discovery with Burgio. Moreover, she sued defendant only six months after the entry of the consent judgment. Although Burgio may be judgment proof, nothing prevents defendants from joining him in this action.

Defendants assert that Karpovich's alleged violation of *Rule* 4:5–1(b)(2) compels dismissal of this action. We decline, however, to rule that a violation of *Rule* 4:5–1(b)(2) necessarily mandates dismissal. *See Gelber v. The Zito Partnership,* 147 *N.J.* 561, 567–68, 688 *A.*2d 1044 (1997) (refusing to apply a rule of automatic dismissal whenever a violation of *Rule* 4:5–1(b)(2) occurs). Rather, a court must exercise its discretion and consider the purposes of the entire controversy doctrine before barring a subsequent action. *Id.* at 568, 688 *A.*2d 1044. Here, there is no unfairness to the courts or to defendants in refusing to bar Karpovich's claims. In contrast, the unfairness to Karpovich would be significant. She would be denied the opportunity to recover fully from all potential responsible parties. To bar Karpovich's legal-malpractice action because she initially tried to resolve the underlying claim without involving any judicial resources would be too harsh.

The judgment of the Appellate Division is reversed.

STEIN, J., concurring in part and dissenting in part.

I join in the Court's disposition of this appeal, but not because I agree with its determination that the entire controversy doctrine should not apply to attorney-malpractice claims. Rather, for the reasons stated in my concurring and dissenting opinion in *Olds v. Donnelly,* 150 *N.J.* 424, 696 *A.*2d 633 (1997), also decided today, I would overrule *Cogdell v. Hospital Center at Orange,* 116 *N.J.* 7, 560 *A.*2d 1169 (1989), and consequently no longer would apply the entire controversy doctrine to bar suits against parties omitted from prior litigation.

STEIN, J., has filed a separate opinion, concurring in part and dissenting in part.

*For reversal*—Chief Justice PORITZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI and COLEMAN—6.