NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 11-4297
_____

EDWARD L. REID, JR.,

Appellant

v.

TRANSPORTATION INSURANCE COMPANY;
JOHN/JANE DOES (1-10) (FICTITIOUS NAMES);
ABC CORPORATIONS (1-100) (FICTITIOUS ENTITIES)

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 1-10-cv-06246)
District Judge:  Honorable Robert B. Kugler

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 5, 2012

Before:  FUENTES, FISHER and COWEN, *Circuit Judges*.

(Filed: October 19, 2012)

_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge.*

Edward L. Reid, Jr. ("Reid") appeals from an order granting summary judgment to Transportation Insurance Company ("Transportation")[1] in Reid's action alleging bad faith based on Transportation's failure to negotiate a settlement in Reid's underinsured motorist action. We will affirm.

I.

Because we write principally for the parties, who are familiar with the factual context and legal history of this case, we will set forth only those facts that are necessary to our analysis.

On October 1, 1999, in the course of his employment, Reid was involved in a serious automobile accident with a vehicle driven by a third party. Transportation had issued an insurance policy to Reid's employer that contained "Business Auto" coverage for the period during which Reid was injured. The policy included $1,000,000 of underinsured motorists ("UIM") coverage.

Following the parties' dispute over assignment of subrogation rights, the parties engaged in seven years of litigation in the New Jersey courts regarding Transportation's UIM liability. Reid ultimately succeeded in his action and secured a judgment totaling $1,036,650.56, which included $186,650.56 in prejudgment interest. Two years later,

---

[1] On January 31, 2011, the District Court entered a stipulation in which the parties agreed to amend and replace all references to CNA Insurance Company in the caption and body of Reid's Complaint to Transportation Insurance Company. No. 10-6246, ECF No. 12 (D.N.J. Jan. 31, 2011).

Reid sued Transportation again, this time alleging bad faith failure to negotiate a settlement, bad faith denial of UIM benefits, and bad faith continuation of vexatious litigation.  Specifically, Reid contended that Transportation acted in bad faith by (1) filing for a declaratory judgment to invoke its policy step-down clause, which would have lowered its own policy limits to $100,000; (2) appealing the denial of that judgment; (3) initially consenting to arbitration and then requesting trial; (4) withdrawing that request and agreeing to reschedule arbitration; (5) filing yet another motion to vacate the order to arbitrate under the theory that Reid was disqualified from UIM benefits for failing to investigate potential contributory tortfeasors; (6) filing a motion for reconsideration of the Superior Court's refusal to vacate the arbitration order; and (7) appealing the denial of the motion for reconsideration.

On May 27, 2011, Transportation filed a motion for summary judgment in which it argued that Reid's bad faith claim was *res judicata* under New Jersey's Entire Controversy Doctrine ("ECD").  The District Court granted that motion on November 3, 2011.  Reid timely appealed.

II.

The District Court had jurisdiction over this case under 28 U.S.C. § 1332.  We have jurisdiction under 28 U.S.C. § 1291.  We review a district court's grant of summary judgment *de novo*.  *Fields v. Thompson Printing Co. Inc.*, 363 F.3d 259, 265 (3d Cir. 2004).  Summary judgment is proper where no genuine issue of material fact exists, and

3

the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## III.

Under the Full Faith and Credit Act, 28 U.S.C. § 1738, "a federal court must give the same preclusive effect to a state-court judgment as another court of that State would give." *Parsons Steel, Inc. v. First Ala. Bank*, 474 U.S. 518, 523 (1986). New Jersey's ECD "requires the assertion of all claims arising from a single controversy in a single action at the risk of being precluded from asserting them in the future." *In re Estate of Gabrellian*, 859 A.2d 700, 707 (N.J. Super. Ct. App. Div. 2004). The doctrine "seeks to assure that all aspects of a legal dispute occur in a single lawsuit." *Olds v. Donnelly*, 696 A.2d 633, 637 (N.J. 1997). We have observed that under the ECD, "a party cannot withhold part of a controversy for separate later litigation even when the withheld component is a separate and independently cognizable cause of action." *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 137 (3d Cir. 1999).

Reid argues that the District Court erred when it concluded that his bad faith claim was precluded by the ECD. Reid asserts that (1) his claim did not accrue until the arbitration panel issued a binding award in his favor and (2) by barring his claim, the District Court contradicted the fairness principle embodied within the ECD, a doctrine of equity. We address each of these arguments in turn.

4

A.

First, Reid argues that until the UIM arbitration panel found Transportation liable, he could not have asserted his bad faith claim, because "a bad faith claim is contingent upon the success of the underlying claim for breach of the insurance contract." Pl. Br. at 23. But while Reid is correct that the *success* of a bad faith claim may depend upon the success of the underlying litigation, the *assertion* of a bad faith claim does not. And under the ECD, all claims arising out of the underlying controversy, potentially successful or otherwise, must be brought. *Agusta*, 178 F.3d at 137.

Throughout the course of the UIM litigation, Reid demonstrated that he should have been aware that Transportation's actions could have constituted bad faith. Specifically, on February 8, 2002, Reid raised two affirmative defenses:

> "By virtue of [Transportation's] failure to timely pay the UIM benefits [to] which [Reid] is entitled, they have willfully breached their contract and obligations pursuant to the terms and conditions of [the insurance contract] . . ."

and

> "[Reid] is entitled to all remedies available to him pursuant to N.J.S.A. 39:6A and N.J.S.A. 17:28-1.1, *et seq.* and applicable case law, including UIM benefits, interest, counsel fees, and consequential damages due to [Transportation's] failure to timely pay to him those benefits to which he is entitled."

Def.'s Mot. Summ. J., Ex. F, at 2-3, *Reid v. Trans. Ins. Co.*, No. 10-06246 (D.N.J. May 27, 2011), ECF No. 16-4. Reid's assertion of these defenses shows that he should

5

have known, and may in fact have known, that Transportation's actions could have amounted to bad faith.

Moreover, New Jersey courts have held that where, as here, a bad faith claim is based on first-party UIM litigation, in which "the insurer is in the litigation from the outset, any claims of bad faith can be asserted in the same litigation." *See Taddei v. State Farm Indem. Co.*, No. L-6655-07, 2010 WL 183900, at *3 (N.J. Super. Ct. App. Div. Jan. 21, 2010) (internal citations omitted).[2] Because Reid should have been aware of his bad faith claim, and the claim could have been asserted in his initial litigation, the District Court was correct to apply the ECD and bar Reid's claim.

### B.

Next, Reid argues that a New Jersey state court in our position would decline to apply the ECD because doing so would be unfair and would run counter to the doctrine's purpose. In *Agusta*, we stated that the ECD has three purposes: "(1) complete and final disposition of cases through avoidance of piecemeal decisions; (2) fairness to parties to

---

[2] Reid argues that *Taddei* is unpublished, that unpublished opinions cannot be used as mandatory authority in New Jersey, *see* New Jersey Court Rule 1:36-3, and that the District Court therefore erred in relying on the *Taddei* case. But the District Court never considered *Taddei* to be mandatory authority; indeed, it explicitly acknowledged that *Taddei* was an unpublished decision but noted that in New Jersey, "unpublished opinions are not binding authority, though they can constitute persuasive authority." *Reid v. Trans. Ins. Co.*, No 10-06246, 2011 WL 5325546, at *5 n.2 (D.N.J. Nov. 3, 2011). *See also Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d 145, 152 & n.6 (3d Cir. 1988) (citing an unpublished New Jersey Superior Court decision, recognizing that "we are not bound by that decision," but noting that "[t]he New Jersey rules are, of course, binding only on the New Jersey courts, and we would be remiss in our duty to apply New Jersey law were we to ignore a New Jersey case where the relevant issue is identical").

an action and to others with a material interest in it; and (3) efficiency and avoidance of waste and delay." 178 F.3d at 137; *see also DiTrolio v. Antiles*, 662 A.2d 494, 502 (N.J. 1995) ("The fundamental principle behind the inclusion policy of the entire controversy doctrine is that the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy." (internal quotation marks omitted)). Because the ECD is an equitable doctrine, its application is flexible, "with a case-by-case appreciation for fairness to the parties." *Agusta*, 178 F.3d at 137.

New Jersey courts have emphasized that the guiding principle in applying the ECD is fairness. *See K-Land Corp. No. 28 v. Landis Sewerage Auth.*, 800 A.2d 861, 871 (N.J. 2002) ("[T]he polestar for the application of the [ECD] is judicial fairness." (internal citations omitted)). The New Jersey Supreme Court has held that "[i]n considering fairness to the party whose claim is sought to be barred, a court must consider whether the claimant 'had a fair and reasonable opportunity to have fully litigated that claim in the original action.'" *Id.* at 870 (quoting *Gelber v. Zito P'ship*, 688 A.2d 1044, 1046 (N.J. 1997)). New Jersey courts then weigh that opportunity against the second of the "twin pillars" of the ECD, which is "fairness to the system of judicial administration." *Id.*

7

As we have explained above, Reid demonstrated that he should have known that Transportation's actions may have constituted a bad faith claim. He raised two affirmative defenses, which indicated his belief that Transportation "willfully breached their contract" pursuant to its terms and conditions, and that Transportation failed to "timely pay [Reid's] UIM benefits" to which "[he was] entitled." Because Reid should have known that he had a potential bad faith claim against Transportation, Reid had a fair and reasonable opportunity to have fully litigated that claim in the original action.

On the issue of fairness to the system of judicial administration, we agree with the District Court that where, as here, a plaintiff's bad faith claim is based on first-party UIM litigation, it is more efficient to require a plaintiff to raise his bad faith claim in the same lawsuit in which he seeks insurance benefits. Such a requirement conserves judicial resources while ensuring fairness to plaintiffs.

IV.

For the reasons set forth above, we will affirm the order of the District Court.