HARDIMAN, Circuit Judge, dissenting.
 

 The entire controversy doctrine is New Jersey's "extremely robust claim preclusion
 device that requires adversaries to join all possible claims stemming from an event or series of events in one suit."
 
 Paramount Aviation Corp. v. Agusta
 
 ,
 
 178 F.3d 132
 
 , 135 (3d Cir. 1999). As my colleagues acknowledge, all of the doctrine's requirements are met in this case. They nevertheless give Appellant Jean Charte a second bite at the apple because of "fairness." I agree that fairness is central to the doctrine,
 
 see
 

 Crispin v. Volkswagenwerk, A.G.
 
 ,
 
 96 N.J. 336
 
 ,
 
 476 A.2d 250
 
 , 253 (1984), but that equitable notion is a two-way street and I think the Defendants-who thought they were settling their dispute with Charte-are entitled to repose in this lawsuit. I would affirm the District Court's order.
 

 Central to my evaluation of this appeal is an important finding by the District Court. After giving due consideration to all the facts and procedural history of the case, the trial judge found that by purporting to settle all disputes with Defendants and then seeking to activate this
 
 qui tam
 
 action, Charte had engaged in gamesmanship.
 
 United States ex rel. Charte v. Am. Tutor, Inc.
 
 ,
 
 2018 WL 1960448
 
 , at *7 (D.N.J. Apr. 26, 2018). I would give that finding the respect it is due. Institutional competence is especially important here, because application of the entire controversy doctrine is "discretionary and clarification of the limits of the doctrine is best left to case-by-case determination."
 
 Rycoline Prod., Inc. v. C & W Unlimited
 
 ,
 
 109 F.3d 883
 
 , 886 (3d Cir. 1997) (quoting
 
 Circle Chevrolet Co. v. Giordano, Halleran & Ciesla
 
 ,
 
 142 N.J. 280
 
 ,
 
 662 A.2d 509
 
 , 513 (1995) ). And the District Court's finding is supported by the record. Charte waited until she had filed her federal
 
 qui tam
 
 suit to make futile requests to "consolidate" the state and federal actions.
 
 Charte
 
 ,
 
 2018 WL 1960448
 
 , at *1. Then she settled in state court before the District Court had a chance to rule.
 

 Most significantly, Charte never alerted the state court-the court that everyone but she believed was overseeing the entire controversy-to her
 
 qui tam
 
 claim. Perhaps litigating her
 
 qui tam
 
 claim in the state proceeding would've been impractical. Perhaps she believed the state court lacked jurisdiction (as the Majority holds today, it did not). But those considerations were for the court, not Charte, to weigh.
 
 See
 

 Petrocelli v. Daniel Woodhead Co.
 
 ,
 
 993 F.2d 27
 
 , 31 (3d Cir. 1993). Charte's "failure to allow the trial court the opportunity to manage the full controversy at the outset,"
 
 DiTrolio v. Antiles
 
 ,
 
 142 N.J. 253
 
 ,
 
 662 A.2d 494
 
 , 506 (1995), saps her impracticability argument of force and suggests strategic behavior.
 
 [1]
 

 The Majority argues that Charte "followed every statutory requirement that applies to
 
 qui tam
 
 relators," so it would be unfair to apply the entire controversy doctrine. Maj. Op. 353. But state court judgments "may well deprive plaintiffs of the 'right' to have their federal claims relitigated in federal court."
 
 San Remo Hotel, L.P. v. City & Cty. of San Francisco
 
 ,
 
 545 U.S. 323
 
 , 342,
 
 125 S.Ct. 2491
 
 ,
 
 162 L.Ed.2d 315
 
 (2005). Charte's right to litigate her
 
 qui tam
 
 suit in federal court does not imply a right to settle the same controversy in state court while evading normal preclusion principles.
 

 The Majority emphasizes that holding Charte precluded would be "unfair to the Government's interests." Maj. Op. 353;
 
 see
 

 id.
 

 at 353-54
 
 . Yet the Government consented to the District Court's disposition of this case and the Government is in the best position to decide whether Charte's suit would or would not vindicate its interests. And, contrary to the Majority's view, Maj. Op. 352-53, there is little reason to think the Government would be precluded by the entire controversy doctrine just because Charte is.
 
 See
 

 Cogdell by Cogdell v. Hosp. Ctr. at Orange
 
 ,
 
 116 N.J. 7
 
 ,
 
 560 A.2d 1169
 
 , 1174 (1989) (the entire controversy doctrine "tries foremost to protect an absent person from an adjudication of his or her interests");
 
 cf.
 

 United States ex rel. Vaughn v. United Biologics, L.L.C.
 
 ,
 
 907 F.3d 187
 
 , 194 (5th Cir. 2018) ("[T]he Government should not be bound if the dismissal is for reasons not tied to the underlying legal merit.").
 

 For all the procedural brainteasers
 
 qui tam
 
 preclusion might offer in other cases, this case is straightforward. The Defendants spent seven years in the dark about Charte's
 
 qui
 

 tam
 
 claim.
 
 [2]
 
 For five of those years, they thought this dispute was behind them. Charte kept the state court in the dark too. The Supreme Court has observed of statutes of limitations that their "conclusive effects are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared .... [T]he right to be free of stale claims in time comes to prevail over the right to prosecute them."
 
 Order of R.R. Telegraphers v. Ry. Express Agency
 
 ,
 
 321 U.S. 342
 
 , 348-49,
 
 64 S.Ct. 582
 
 ,
 
 88 L.Ed. 788
 
 (1944). Fairness dictates the application of that same principle here.
 

 * * *
 

 "[A]t some point litigation over the particular controversy [must] come to an end."
 
 Mystic Isle Dev. Corp. v. Perskie & Nehmad
 
 ,
 
 142 N.J. 310
 
 ,
 
 662 A.2d 523
 
 , 534 (1995) (quoting Restatement (Second) of Judgments § 19 cmt. a (1982)). For these litigants, that point has long since passed. With respect, I dissent.
 

 The Majority contends that, by virtue of the seal, the Defendants would have been unaware of Charte's
 
 qui tam
 
 claim regardless whether she filed in state court or federal court. That is true as far as it goes. But alerting the state court
 
 ex parte
 
 (before filing in either federal or state court) would have given it the opportunity to ensure a fair adjudication of the entire controversy.
 
 Cf.
 

 Gelber v. Zito P'ship
 
 ,
 
 147 N.J. 561
 
 ,
 
 688 A.2d 1044
 
 , 1046 (1997) ("Quite aside from joinder of the controversies in either the arbitral or judicial forum, a trial court, once informed of related actions, can employ various procedural tools to prevent excessively complicated or unfair litigation."). For example, the court might have required the Government to make its intervention decision sooner.
 

 My colleagues correctly note that much of this delay was attributable to the Government's requests for extensions, only some of which Charte consented to. But Charte did not try to force the Government's hand until August 2017. I acknowledge Charte was not in the driver's seat before the Government declined to intervene, but it was her decision to settle with Defendants while holding another claim in reserve.