**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0926-22

LX FINANCIAL, LLC, PAUL
LUYKX, ARMAND GIULIANO,
ARTHUR BAER, BEST VALUE
HOMES, LLC, BRE CAPITAL,
LLC, CHARLOTTE PERRONE,
CHINA IBC GROUP, LLC, DB
ALEX, LLC, EILEEN EGAN,
EILEEN EGAN IRA, EILEEN
KUSALBA IRA, F26 HOLDINGS,
LLC, JERRY RANMARINE,
JERRY RANMARINE, LLC,
JIM JETER, JLK INVESTMENTS,
LX FINANCIAL 401K, PAUL
LUYKX IRA, SUSAN LUYKX
IRA, VIPAL M. SHAH, and
WILLIAM JOSEPH HEILIG IRA,

     Plaintiffs-Appellants,

v.

RAPHAEL ROSENBLATT, ESQ.
and ROSENBLATT LAW, P.C.,

     Defendants-Respondents.

_____

Submitted March 20, 2024 – Decided July 9, 2024

Before Judges Currier, Firko and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-3754-22.

Mark S. Guralnick, attorney for appellants.

Kaufman Dolowich & Voluck, LLP, attorneys for respondents (Iram P. Valentin and Timothy M. Ortolani, of counsel and on the brief).

PER CURIAM

Plaintiffs, who are business investors, appeal from the October 27, 2022 order dismissing their complaint with prejudice after the court found the claims were barred under the entire controversy doctrine. After our de novo review, because we find the trial court erred in applying the entire controversy doctrine and dismissing the complaint, we reverse.

I.

In 2017, plaintiffs filed a complaint (Complaint I) in Superior Court, Bergen County, against several attorneys who represented them in various real estate transactions. The operative amended complaint filed in 2018, alleged claims of professional negligence, breach of fiduciary duty, and breach of contract. Plaintiffs were represented by defendants Raphael M. Rosenblatt, Esq., and Rosenblatt Law, P.C. (Rosenblatt) in Complaint I.

In February 2019, after one of the defendant attorneys in Complaint I filed a petition for bankruptcy, the bankruptcy court issued an automatic stay of the claims against him. In June 2019, the parties to Complaint I agreed to a consent order dismissing the matter in its entirety without prejudice. The consent order stated in pertinent part:

> 2. Plaintiffs . . . shall be permitted to move to restore and re-file their [c]omplaint with all existing pertinent claims, counts, and defenses reinstated, restored, and/or otherwise continued under a new docket number within [sixty] days of relief from the automatic stay by the bankruptcy court, whether by motion or disposition of the [b]ankruptcy [m]atter. . . .

> . . . .

> 4. The [p]arties agreeing to the terms of this [c]onsent [o]rder shall not object to [d]efendants . . . restoring, re[-]filing, or seeking leave to reinstate their [t]hird-[p]arty [c]omplaint . . . . The [p]arties agreeing to the terms of this [c]onsent [o]rder also agree not to seek dismissal of the [t]hird-[p]arty [c]omplaint pursuant to R[ule] 4:46-2, or otherwise, upon the restoration, re-filing, or reinstatement of . . . [d]efendants' [t]hird-[p]arty [c]omplaint.

> 5. All prior discovery and deposition testimony conducted in this action is hereby preserved and shall apply to the subsequent action re-filed under a new docket number pursuant to paragraph 2, above.

In July 2019, the bankruptcy court lifted the automatic stay. Rosenblatt did not take any action to reinstate or restore Complaint I. Therefore, plaintiffs

3

retained new counsel who filed a new complaint (Complaint II) in January 2021 in Morris County. In addition to the allegations asserted in Complaint I arising out of the real estate transactions, Complaint II included several new claims and additional defendants all related to the transactions. The statute of limitations had not yet expired as to the Complaint I defendants.

Thereafter, the Complaint II defendants moved to dismiss the complaint for failure to comply with the deadline established in the consent order relating to the restoration of Complaint I.

In June 2021, the Morris County court granted the motion and dismissed Complaint II with prejudice for failure to state a claim under Rule 4:6-2(e). The trial court found "[t]he [c]onsent [o]rder expressly permitted [p]laintiffs to re-file the [c]omplaint within [sixty] days of relief from the automatic stay," and that "[b]y clear implication, any refiling subsequent to the expiration of the [sixty]-day deadline was precluded by agreement of the parties."

On July 11, 2022, plaintiffs filed a third complaint (Complaint III) in Bergen County against Rosenblatt, alleging professional negligence and breach of contract. Plaintiffs alleged Rosenblatt breached his duty to monitor the bankruptcy court proceedings to timely reinstate and restore Complaint I, and

A-0926-22

that the parties' agreement expressly provided that Rosenblatt would investigate, prepare, and present plaintiffs' claims, and "properly handle [the] case."

Rosenblatt moved to dismiss Complaint III with prejudice under Rule 4:6-2(e), asserting the action was barred under the entire controversy doctrine. Rosenblatt contended plaintiffs abandoned Complaint I in Bergen County when they chose to file "an entirely different matter in Morris County," which triggered the entire controversy doctrine because Complaint III arose from "the same set of core, interrelated facts" as delineated in Complaint II. Plaintiffs opposed the motion, asserting their claims alleged against Rosenblatt in Complaint III became ripe only after Complaint II was dismissed with prejudice.

On October 27, 2022, the trial court granted Rosenblatt's motion to dismiss Complaint III with prejudice. The court found the consent order "preclude[d] any refiling after the expiration of the [sixty]-day deadline" and "[p]laintiffs clearly failed to comply" with the deadline in the consent order. The trial court stated "[a] legal malpractice claim against . . . Rosenblatt . . . could have been included in [Complaint II] or at any time after the expiration of the [sixty]-day" deadline.

The court further found the "legal malpractice claim [against Rosenblatt] accrued the moment that the [sixty]-day time limit had expired, which was on

September 25, 2019."  Therefore, "[p]laintiffs violated the [entire controversy doctrine] when they failed to join . . . Rosenblatt . . . and the claims against . . . [Rosenblatt] in . . . Complaint [II]."

II.

On appeal, plaintiffs contend the court erred in finding the entire controversy doctrine required the dismissal of Complaint III.  They assert their claims against Rosenblatt did not accrue until the underlying case (Complaint II) was dismissed with prejudice.

Our review of a "Rule 4:6-2(e) motion[] to dismiss for failure to state a claim upon which relief can be granted [is] . . . de novo."  Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 171 (2021) (citing Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 108 (2019)).

In considering a Rule 4:6-2(e) motion, "[a] reviewing court must examine '"the legal sufficiency of the facts alleged on the face of the complaint,"' giving the plaintiff the benefit of '"every reasonable inference of fact."'"  Ibid. (quoting Dimitrakopoulos, 237 N.J. at 107).  "The essential test [for determining the adequacy of a pleading] is simply 'whether a cause of action is "suggested" by the facts.'"  Green v. Morgan Props., 215 N.J. 431, 451-52 (2013) (quoting Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989)).  "At

6

this preliminary stage of the litigation the [c]ourt is not concerned with the ability of [the] plaintiffs to prove the allegation contained in the complaint." Printing Mart-Morristown, 116 N.J. at 746.

Rule 4:30A states:

> Non-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine, except as otherwise provided by [Rule] 4:64-5 (foreclosure actions) and [Rule] 4:67-4(a) (leave required for counterclaims or cross-claims in summary actions).

"The entire controversy doctrine 'generally requires parties to an action to raise all transactionally related claims in that same action.'" Largoza v. FKM Real Est. Holdings, Inc., 474 N.J. Super. 61, 79 (App. Div. 2022) (quoting Carrington Mortg. Servs., LLC v. Moore, 464 N.J. Super. 59, 67 (App. Div. 2020)). "That mandate encompasses not only matters actually litigated but also other aspects of a controversy that might have been litigated and thereby decided in an earlier action." Higgins v. Thurber, 413 N.J. Super. 1, 12 (App. Div. 2010), aff'd, 205 N.J. 227 (2011).

"The doctrine has three fundamental purposes:  '(1) the need for complete and final disposition through the avoidance of piecemeal decisions; (2) fairness to parties to the action and those with a material interest in the action; and (3)

efficiency and the avoidance of waste and the reduction of delay.'" Bank Leumi USA v. Kloss, 243 N.J. 218, 227 (2020) (quoting DiTrolio v. Antiles, 142 N.J. 253, 267 (1995)).

Application of the entire controversy doctrine follows principles of equity and "'"does not apply to unknown or unaccrued claims."'" Dimitrakopoulos, 237 N.J. at 99 (quoting Wadeer v. N.J. Mfrs. Ins. Co., 220 N.J. 591, 606 (2015)). "When a court decides whether multiple claims must be asserted in the same action, its initial inquiry is whether they 'arise from related facts or the same transaction or series of transactions.'" Id. at 109 (quoting DiTrolio, 142 N.J. at 267). The determinative consideration by the court is not whether the "successive claims share common legal issues," but rather "'whether distinct claims are aspects of a single larger controversy because they arise from interrelated facts.'" Ibid. (quoting DiTrolio, 142 N.J. at 271).

In Olds v. Donnelly, 150 N.J. 424, 443 (1997), our Supreme Court held the entire controversy doctrine does not compel a plaintiff to assert a legal malpractice claim against an attorney in the action giving rise to the malpractice claim. The Court reiterated this core principle in Dimitrakopoulos, stating:

> [T]he entire controversy doctrine does not require an attorney's current or former client to assert a legal malpractice claim against that attorney in the litigation that gave rise to the malpractice claim even if the two

> claims arise from the same or related facts and would otherwise be subject to mandatory joinder.
>
> [237 N.J. at 112 (citing Olds, 150 N.J. at 443).]

The Court further stated in Dimitrakopoulos that "even if [a] malpractice claim accrued before or during [an] earlier action, the client may avoid the entire controversy doctrine by demonstrating that the prior forum did not afford '"a fair and reasonable opportunity to have fully litigated"' the malpractice claim." Id. at 99 (quoting Gelber v. Zito P'ship, 147 N.J. 561, 565 (1997)).

An application of the Olds and Dimitrakopoulos principles to the specific circumstances presented here constrains us to reverse the trial court's determination that the entire controversy doctrine required the dismissal of Complaint III.

Preliminarily, Complaint II involved the same allegations regarding the series of real estate transactions that gave rise to Complaint I. Although different counsel represented plaintiffs in Complaint II, the facts and claims arose out of the same business transactions as asserted in Complaint I. Therefore, it remained the underlying litigation in which Rosenblatt originally represented plaintiffs.

The claims against Rosenblatt did not arise out of the original business transactions. They arose out of his failure to reinstate Complaint I in accordance

with the consent order. Moreover, plaintiffs could not have brought any claims against Rosenblatt in Complaint I as the pleading was already dismissed when their claims against him accrued.

In addition, plaintiffs' claims in Complaint I were not adjudicated nor even dismissed with prejudice when Complaint II was filed. It was not until the court determined Rosenblatt did not comply with the consent order's deadline to restore Complaint I that plaintiffs' claims accrued against Rosenblatt. In considering the motion to dismiss Complaint II, another court may have interpreted the language of the consent order differently or determined the addition of new claims and defendants rendered Complaint II a new action and not an attempt to restore Complaint I. Plaintiffs did not sustain "actual," "real[,] and substantial" damages, Dimitrakopoulos, 237 N.J. at 116 (first quoting Olds, 150 N.J. at 437; and then Grunwald v. Bronkesh, 131 N.J. 483, 495 (1993)), until Complaint II was dismissed with prejudice.

Moreover, if Rosenblatt was added as a defendant to Complaint II, the court would still have dismissed the action because of its determination regarding the sixty-day deadline. Therefore, plaintiffs would still have to file a separate complaint against Rosenblatt to assert their claims of professional negligence.

A-0926-22

The entire controversy doctrine is an equitable doctrine. As the Dimitrakopoulos Court stated:

> [A] court should not preclude a claim under the entire controversy doctrine if such a remedy would be unfair in the totality of the circumstances and would not promote the doctrine's objectives of conclusive determinations, party fairness, and judicial economy and efficiency. A range of equitable principles may apply to a particular case.
>
> [Id. at 119 (citations omitted).]

The dismissal of Complaint III did not satisfy any of the entire controversy doctrine's objectives. There were no conclusive determinations as none of plaintiffs' claims against any party have ever been adjudicated. That is the basis of the professional negligence complaint—Complaint III—against Rosenblatt. Similarly, the dismissal did not result in judicial economy or efficiency as there has been no litigation. Lastly, as stated, the dismissal was unfair to plaintiffs as their claims were not adjudicated. Rosenblatt is not prejudiced because, as counsel to plaintiffs at the time of the execution of the consent order, he was aware of its terms and whether he complied with them. The equitable principles at stake here require the reversal of the court's order dismissing Complaint III.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office

CLERK OF THE APPELLATE DIVISION

A-0926-22