JUSTICE PATTERSON delivered the opinion of the Court.
**98 The entire controversy doctrine "seeks to impel litigants to consolidate their claims arising from a single controversy whenever possible." Thornton v. Potamkin Chevrolet, 94 N.J. 1, 5, 462 A.2d 133 (1983) (quoting Alfone v. Sarno, 87 N.J. 99, 113, 432 A.2d 857 (1981) (internal quotation marks omitted) ). The doctrine serves "to encourage complete and final dispositions through the avoidance of piecemeal decisions and to promote judicial efficiency and the reduction of delay." Wadeer v. N.J. Mfrs. Ins. Co., 220 N.J. 591, 610, 110 A.3d 19 (2015). If a party fails to assert a claim that the entire controversy doctrine requires to be joined in a given action, a court may bar that claim. R. 4:30A; R. 4:7-1.
In this appeal, we review the trial court's judgment dismissing a legal malpractice *138 claim asserted by two clients against their former counsel. The malpractice claim was not asserted until three years after the conclusion of a collection action filed by the law firm against the clients to recover unpaid legal fees. The trial **99 court held that the entire controversy doctrine barred the legal malpractice claim, and an Appellate Division panel affirmed that decision.
We reiterate our holding in Olds v. Donnelly that the entire controversy doctrine does not compel a client to assert a legal malpractice claim against an attorney in the underlying litigation in which the attorney represents the client. 150 N.J. 424, 443, 696 A.2d 633 (1997). A collection action brought by a law firm against its client, however, does not constitute such underlying litigation for purposes of the principle stated in Olds. The assertion of a malpractice claim in such an action -- in which the attorney and client are already adverse -- does not raise the privilege and loyalty concerns that warranted the exception to the entire controversy doctrine recognized in Olds. In appropriate settings, a court may apply the entire controversy doctrine to preclude a legal malpractice claim that a client has declined to assert in the attorney's action to collect unpaid legal fees.
The entire controversy doctrine, however, is constrained by principles of equity. It "does not apply to unknown or unaccrued claims." Wadeer, 220 N.J. at 606, 110 A.3d 19 (quoting DiTrolio v. Antiles, 142 N.J. 253, 273-74, 662 A.2d 494 (1995) ). Consequently, a client whose malpractice claim was not asserted in an attorney's collection action may avoid preclusion of that claim by proving that he or she did not know, and should not reasonably have known, of the existence of the claim during the pendency of the collection action. See Mauro v. Raymark Indus., Inc., 116 N.J. 126, 135-36, 561 A.2d 257 (1989) (citing Ayers v. Township of Jackson, 106 N.J. 557, 583, 525 A.2d 287 (1987) ); Cafferata v. Peyser, 251 N.J. Super. 256, 260-61, 597 A.2d 1101 (App. Div. 1991). Moreover, even if the malpractice claim accrued before or during the earlier action, the client may avoid the entire controversy doctrine by demonstrating that the prior forum did not afford "a fair and reasonable opportunity to have fully litigated" the malpractice claim. Gelber v. Zito P'ship, 147 N.J. 561, 565, 688 A.2d 1044 (1997) (quoting **100 Cafferata, 251 N.J. Super. at 261, 597 A.2d 1101 ). Those principles demand a thorough examination of the individual case.
We conclude that the collection action at issue in this matter was not an "underlying action" as that term is used in Olds, and that the entire controversy doctrine may bar the claim. The record of this appeal, however, is inadequate for an application of the equitable rules that govern here. That record does not reveal when the cause of action for legal malpractice accrued or indicate whether the malpractice claimants would have had "a fair and reasonable opportunity to have fully litigated" their claim had they asserted it in the collection action. DiTrolio, 142 N.J. at 273, 662 A.2d 494 ; see also Wadeer, 220 N.J. at 606, 110 A.3d 19 ; Oliver v. Ambrose, 152 N.J. 383, 396, 705 A.2d 742 (1998). Those questions warrant further consideration by the trial court based on an expanded record.
Accordingly, we reverse the Appellate Division's judgment, and remand this matter to the trial court for further proceedings.
I.
A.
In 2005, Evangelos Dimitrakopoulos settled a dispute with a business associate, *139 Steven Eleftheriou.[1] As a term of that settlement, Dimitrakopoulos and Eleftheriou formed a limited liability company, Integrated Construction and Utilities, LLC (Integrated). The LLC's members were Dimitrakopoulos's wife, Matilde Dimitrakopoulos, who owned a fifty-one percent interest, and Eleftheriou, who owned the remaining forty-nine percent interest. Although he was not a member of the LLC, Evangelos Dimitrakopoulos was the exclusive agent for his wife in the management of the LLC and was responsible for several aspects of its operations. **101 Apparently suspicious that Eleftheriou was diverting Integrated funds, Evangelos Dimitrakopoulos retained the law firm of Borrus, Goldin, Foley, Vignuolo, Hyman and Stahl, P.C. (Borrus firm). In October 2009, he and the Borrus firm signed a retainer agreement, which set forth the hourly rates to be charged for legal services by the two principal attorneys designated to work on the matter, Steven L. Fox and Anthony B. Vignuolo, and by the firm's associates.[2]
In the retainer agreement, Evangelos Dimitrakopoulos agreed to fully cooperate with the firm and pay all bills. The Borrus firm agreed to provide "conscientious, competent and diligent services" and to "seek to achieve solutions which are just and reasonable" for its client, but noted that "attorneys cannot and do not warrant, predict or guarantee results or the final outcome of any case."
Represented by the Borrus firm, the Dimitrakopouloses filed a verified complaint against Steven Eleftheriou and his wife Daniella Eleftheriou in the Chancery Division. The record does not include the verified complaint filed by the Borrus firm and does not reveal the claims that the Borrus firm asserted on the Dimitrakopouloses' behalf. Other than to note that Steven and Daniella Eleftheriou filed a counterclaim, the record does not indicate what proceedings took place during the initial stage of that action.
For reasons that the record does not disclose, the Borrus firm filed a motion to withdraw as counsel for the Dimitrakopouloses shortly after it was retained. On December 17, 2009, the return date of the firm's motion to withdraw from the case, Evangelos Dimitrakopoulos and the Eleftherious agreed that their dispute would be submitted to binding arbitration. The Borrus firm represented that it would submit to the court a list of potential **102 arbitrators and that it would continue to serve as counsel for the Dimitrakopouloses until the court appointed an arbitrator. The Borrus firm and the Eleftherious' counsel agreed to submit to the court a consent order by which the court would appoint an arbitrator and dismiss the action pending in the Chancery Division.
It appears that, after an arbitrator was selected, the Borrus firm was permitted to withdraw as counsel and the Dimitrakopouloses retained substitute counsel to represent them in the arbitration proceedings.
B.
On March 7, 2011, the Borrus firm filed a complaint against Evangelos Dimitrakopoulos *140 in the Law Division. The firm alleged that its former client owed it $ 93,811.95 in fees for legal services and that payment had been demanded and not made. The Borrus firm represented that, in accordance with N.J.S.A. 2A:13-6 and Rule 1:20A-6, it had advised Evangelos Dimitrakopoulos in writing of his right to pursue fee arbitration. Notwithstanding the fact that Matilde Dimitrakopoulos was also its former client, the Borrus firm did not name her as a defendant in the collection action.
Evangelos Dimitrakopoulos, acting pro se, filed an answer to the collection complaint. He admitted that the Borrus firm had demanded payment of its outstanding legal fees, that those fees remained unpaid, and that he had been advised of his statutory right to pursue fee arbitration. Dimitrakopoulos denied, however, that he had "promised to pay for services which were unnecessary and contrary to [his] direction." He filed no counterclaim against the Borrus firm, or any third-party claim.[3]
**103 In a proceeding before the arbitrator on September 6, 2011 -- six months after the collection action was filed -- the Dimitrakopouloses and the Eleftherious settled their dispute. The terms of that settlement are not in the record. In light of the settlement, the arbitrator did not issue an award.
Later that month, the court in the collection matter granted the Borrus firm's unopposed motion to suppress Evangelos Dimitrakopoulos's answer for failure to provide complete and responsive certified answers to interrogatories pursuant to Rule 4:23-5(a)(1). The court imposed that remedy without prejudice. The Borrus firm then sought suppression of the answer with prejudice and the entry of a default judgment against Evangelos Dimitrakopoulos. He opposed that motion, and the trial court declined to suppress his answer with prejudice. The court ordered Dimitrakopoulos to respond to specified interrogatories and gave him additional time to provide the discovery. Evangelos Dimitrakopoulos evidently failed to comply with that order.
On July 12, 2012, the court in the collection matter granted the Borrus firm's unopposed motion for a final judgment by default in the amount of $ 121,947.99 ($ 93,811.95 on a book account for legal services; $ 19,788.99 in prejudgment interest; $ 7935 in attorneys' fees; and $ 412.05 in court costs) plus post-judgment interest. Evangelos Dimitrakopoulos did not appeal the final judgment against him.
Accordingly, a total of sixteen months elapsed between the filing of the Borrus firm's collection action and the entry of the default judgment in that action. After the resolution of the business dispute between the Dimitrakopouloses and the Eleftherious on **104 September 6, 2011, the collection action remained pending for an additional ten months.
C.
On September 10, 2015, approximately three years after the entry of judgment in *141 the collection action, Evangelos and Matilde Dimitrakopoulos sued the Borrus firm, Fox, and Vignuolo for legal malpractice. In their complaint filed in the Law Division, the Dimitrakopouloses alleged that the Borrus firm had agreed to binding arbitration of the business dispute without their consent. They asserted that their attorneys were negligent in failing to amend the Chancery Division complaint to assert claims relating to a competing business established by Steven Eleftheriou and that the omission of claims relating to that new business had limited their recovery in arbitration. The Dimitrakopouloses also claimed that their counsel improperly conducted discovery, declined to inform them about developments relevant to their case, and failed to obtain an adequate expert's report, and that the firm's bills were inappropriate. The Dimitrakopouloses sought compensatory and punitive damages and other relief.
The Borrus firm, Fox, and Vignuolo moved to dismiss the complaint for failure to state a claim on which relief could be granted under Rule 4:6-2(e), based on the entire controversy doctrine and the doctrine of waiver. The Dimitrakopouloses opposed the motion. They argued that they were not obligated to assert a counterclaim for malpractice in the collection case because the six-year statute of limitations on malpractice actions had yet to run, and because they did not know during the pendency of the underlying action that their former counsel had committed malpractice. At oral argument, the Dimitrakopouloses informed the trial court that the damages claimed in the malpractice action were known to them as of September 6, 2011, the day that they settled their dispute with the Eleftherious.
The trial court agreed that the entire controversy doctrine did not compel the Dimitrakopouloses to assert their malpractice **105 claim during the underlying action in which the Borrus firm had represented them but concluded that the Dimitrakopouloses could have asserted their malpractice claim in the collection matter. The court found that the Dimitrakopouloses were aware of their malpractice claim when they resolved their dispute with the Eleftherious and that the ten months after, during which the collection action continued, afforded a reasonable period in which to pursue a malpractice claim. The court entered an order dismissing the malpractice action with prejudice pursuant to Rule 4:6-2(e).
The Dimitrakopouloses appealed the trial court's judgment. In an unpublished opinion, an Appellate Division panel affirmed that judgment. The panel acknowledged that the entire controversy doctrine does not preclude claims that are unknown, unarisen, or unaccrued and does not bar any cause of action if the prior forum did not afford a full and fair opportunity to litigate the claim. The panel stated that under this Court's decision in Olds, legal malpractice claims are exempt from the entire controversy doctrine to the extent that they need not be asserted in the underlying action. The panel confirmed, however, that for purposes of the entire controversy doctrine, the underlying action was the litigation between the Dimitrakopouloses and the Eleftherious, not the Borrus firm's collection action.
Noting the Dimitrakopouloses' concession that their damages were ascertained when the underlying action concluded in September 2011, the panel reasoned that, by that point in time, the malpractice claim had accrued. Like the trial court, the panel concluded that during the remaining ten months of the collection action, the Dimitrakopouloses had a fair and reasonable opportunity to litigate their malpractice *142 claim. The panel did not reach the Borrus firm's waiver argument.
We granted the Dimitrakopouloses' petition for certification. 232 N.J. 280, 179 A.3d 1041 (2018). We also granted the motion of the New Jersey State Bar Association (NJSBA) to appear as amicus curiae.
**106 II.
A.
The Dimitrakopouloses urge that we reverse the Appellate Division's judgment and hold that their claim is not barred by the entire controversy doctrine. They assert that when the collection action was filed, they were representing themselves and were unaware that they had a claim for malpractice. They contend that any application of the entire controversy doctrine that requires a pro se litigant to identify a malpractice claim would be contrary to public policy. The Dimitrakopouloses assert that they did not have a fair and reasonable opportunity to litigate their malpractice claim in the collection action because a collection action involves only attorneys' fees.
B.
The Borrus firm, Fox, and Vignuolo contend that we should affirm the Appellate Division panel's judgment, or, in the alternative, remand the matter to the trial court for a determination of the date on which the Dimitrakopouloses' malpractice claim accrued. They observe that the Dimitrakopouloses submitted no certification or other proof in support of their contention that they were unaware of their malpractice claim until years after the underlying action resolved. Noting Evangelos Dimitrakopoulos's assertion in the answer to the collection complaint that he was billed for legal work that was unnecessary and contrary to his direction, the Borrus firm, Fox, and Vignuolo argue that Dimitrakopoulos was clearly aware of his legal malpractice claim when he filed that answer. They argue that the doctrine of waiver, like the entire controversy doctrine, bars the malpractice claim.
C.
Amicus curiae NJSBA urges that we affirm the Appellate Division's judgment, arguing that the Borrus firm's collection lawsuit is not an underlying action for purposes of Olds because it **107 is not the case in which the firm represented the Dimitrakopouloses and because it raises no concerns about privileged communications between lawyer and client. The NJSBA notes that when an attorney sues a client for outstanding legal fees, the client has the right to request fee arbitration, a proceeding that permits a client to preserve a legal malpractice claim against a later assertion of the entire controversy doctrine. The NJSBA contends that unless the entire controversy doctrine applies in the circumstances of this appeal, no attorney's collection judgment could be considered final because the client would be permitted to bring a malpractice action at a later stage.
III.
A.
A court considering a Rule 4:6-2(e) motion examines "the legal sufficiency of the facts alleged on the face of the complaint," Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746, 563 A.2d 31 (1989), limiting its review to "the pleadings themselves," Roa v. Roa, 200 N.J. 555, 562, 985 A.2d 1225 (2010). If the court considers evidence beyond the pleadings in a Rule 4:6-2(e) motion, that motion becomes a motion for summary judgment, *143 and the court applies the standard of Rule 4:46. Ibid.; see also Wreden v. Township of Lafayette, 436 N.J. Super. 117, 128, 92 A.3d 681 (App. Div. 2014).
"At this preliminary stage of the litigation the Court is not concerned with the ability of plaintiffs to prove the allegation contained in the complaint," and the plaintiff is "entitled to every reasonable inference of fact." Printing Mart-Morristown, 116 N.J. at 746, 563 A.2d 31. Accordingly, review of a complaint's factual allegations must be "undertaken with a generous and hospitable approach." Ibid. Nonetheless, if the complaint states no claim that supports relief, and discovery will not give rise to such a claim, the action should be dismissed.
**108 Rezem Family Assocs., LP v. Borough of Millstone, 423 N.J. Super. 103, 113, 30 A.3d 1061 (App. Div. 2011) ; Camden Cty. Energy Recovery Assocs., L.P. v. DEP, 320 N.J. Super. 59, 64-65, 726 A.2d 968 (App. Div. 1999).
An appellate court reviews de novo the trial court's determination of the motion to dismiss under Rule 4:6-2(e). Stop & Shop Supermarket Co., LLC v. County of Bergen, 450 N.J. Super. 286, 290, 162 A.3d 291 (App. Div. 2017). It owes no deference to the trial court's legal conclusions. Rezem Family Assocs., 423 N.J. Super. at 114, 30 A.3d 1061.
B.
1.
The entire controversy doctrine "embodies the principle that the adjudication of a legal controversy should occur in one litigation in only one court." Cogdell ex rel. Cogdell v. Hosp. Ctr. at Orange, 116 N.J. 7, 15, 560 A.2d 1169 (1989) ; see also N.J. Const. art. VI, § 3, ¶ 4 (providing that, subject to court rules, "the Law Division and the Chancery Division shall each exercise the powers and functions of the other division when the ends of justice so require, and legal and equitable relief shall be granted in any cause so that all matters in controversy between the parties may be completely determined"). The doctrine "seeks to impel litigants to consolidate their claims arising from a 'single controversy' whenever possible." Thornton, 94 N.J. at 5, 462 A.2d 133 (quoting Alfone, 87 N.J. at 113, 432 A.2d 857 ).
Three significant concerns in the administration of justice support claim preclusion under the entire controversy doctrine: "(1) the need for complete and final disposition through the avoidance of piecemeal decisions; (2) fairness to parties to the action and those with a material interest in the action; and (3) efficiency and the avoidance of waste and the reduction of delay." Wadeer, 220 N.J. at 605, 110 A.3d 19 (quoting DiTrolio, 142 N.J. at 267, 662 A.2d 494 ); accord Highland Lakes Country Club & Cmty. Ass'n v. Nicastro, 201 N.J. 123, 125, 988 A.2d 90 (2009).
**109 A series of court rules implement the entire controversy doctrine in our courts. Subject to exceptions not relevant here, Rule 4:30A provides that "[n]on-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine." Rule 4:7-1 addresses the filing of counterclaims mandated by the doctrine. In their initial pleadings, parties must also disclose in certified form "whether the matter in controversy is the subject of any other action pending in any court or of a pending arbitration proceeding," and "whether any other action or arbitration proceeding is contemplated." R. 4:5-1(b)(2). That disclosure requirement exists "to implement the philosophy of the entire controversy doctrine." Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 4:5-1 (2019).
*144 When a court decides whether multiple claims must be asserted in the same action, its initial inquiry is whether they "arise from related facts or the same transaction or series of transactions." DiTrolio, 142 N.J. at 267, 662 A.2d 494. The doctrine does not mandate that successive claims share common legal issues in order for the doctrine to bar a subsequent action. Wadeer, 220 N.J. at 605, 110 A.3d 19 ; DiTrolio, 142 N.J. at 271, 662 A.2d 494. Instead, "the determinative consideration is whether distinct claims are aspects of a single larger controversy because they arise from interrelated facts." DiTrolio, 142 N.J. at 271, 662 A.2d 494.
2.
The entire controversy doctrine raises special concerns when invoked in the setting of legal malpractice. Olds, 150 N.J. at 446, 696 A.2d 633. If a lawyer's handling of a matter generates a malpractice claim, his or her subsequent invocation of the entire controversy doctrine implicates the attorney-client relationship, the lawyer's ethical obligations, and client confidences. Id. at 440-43, 696 A.2d 633 ; see N.J.S.A. 2A:84A-20(2)(c) ; N.J.R.E. 504(2)(c) ; R.P.C. 1.6(c)(2).
**110 We first confronted an application of the entire controversy doctrine to a legal malpractice claim in Circle Chevrolet Co. v. Giordano, Halleran & Ciesla, 142 N.J. 280, 662 A.2d 509 (1995). There, we affirmed the dismissal of a legal malpractice action brought by a commercial tenant against its former attorney. Id. at 303, 662 A.2d 509. The tenant's attorney allegedly committed malpractice when he approved the landlord's erroneous formula for the calculation of rent increases as part of the settlement of a rent dispute. Id. at 286, 662 A.2d 509. Although the attorney disclosed his mistake to his client and withdrew as counsel after filing an action on his client's behalf to reform the lease, the client waited until the reformation action was settled before filing an action for malpractice against its former counsel. Id. at 286-88, 662 A.2d 509. Rejecting the former client's argument that legal malpractice claims should be exempt from the entire controversy doctrine, we held that the client was compelled to assert its malpractice claim in the reformation action. Id. at 291, 303, 662 A.2d 509. Because the client had not done so, we barred its claim. Id. at 303, 662 A.2d 509.
In Olds, decided two years after Circle Chevrolet, we again considered the impact of the entire controversy doctrine on legal malpractice claims. There, an attorney representing the plaintiff in a medical malpractice action allegedly failed to timely serve the summons and complaint on a defendant physician before withdrawing as counsel in the matter. Olds, 150 N.J. at 428-29, 696 A.2d 633. The former client filed a legal malpractice claim against the attorney, who moved to dismiss the action because the legal malpractice claim had not been asserted in the underlying medical malpractice litigation as Circle Chevrolet required. Id. at 430, 696 A.2d 633. The Appellate Division declined to bar the legal malpractice action because it had not accrued until the court dismissed the plaintiff's medical malpractice claim against the physician. Id. at 431, 696 A.2d 633.
We affirmed and modified the Appellate Division panel's judgment. We concurred with the panel that the client's legal malpractice **111 claim remained unaccrued until the client's medical malpractice claim was dismissed. Id. at 439, 696 A.2d 633. We reiterated that the entire controversy doctrine "encompasses 'virtually all causes, claims, and defenses relating to a controversy' between parties engaged in litigation." Id. at 433, 696 A.2d 633 (quoting Cogdell, 116 N.J. at 16, 560 A.2d 1169 ). *145 Nonetheless, we characterized claim preclusion under Rule 4:30A as "a remedy of last resort," id. at 446, 696 A.2d 633, and cautioned that a court should determine whether a remedy short of preclusion "will vindicate the cost or prejudice to other parties and the judicial system," id. at 448, 696 A.2d 633.
Most significantly, we directly acknowledged criticism of our decision in Circle Chevrolet and conceded that our decision in that case had not "fulfilled our expectations." Id. at 440, 696 A.2d 633. We noted that when an attorney is "made the adversary" and a client is forced to engage a second attorney to pursue a legal malpractice claim in a pending litigation, the interests of the first attorney and the client diverge. Ibid. We also recognized that the Circle Chevrolet rule might force clients to forego malpractice claims in order to maintain their legal representation until pending litigation is resolved, and that "the requirement that clients join their attorneys in the original lawsuit jeopardizes attorney-client confidences." Id. at 440-41, 696 A.2d 633. We concluded that "the risk of the disclosure of privileged information and the generally adverse effects on attorney-client relationships outweigh any benefit from requiring a client to assert a malpractice claim in the pending lawsuit." Id. at 441-42, 696 A.2d 633.[4] We therefore held **112 that "the entire controversy doctrine no longer compels the assertion of a legal-malpractice claim in an underlying action that gives rise to the claim." Id. at 443, 696 A.2d 633.
In Olds, we thus stated a core principle: the entire controversy doctrine does not require an attorney's current or former client to assert a legal malpractice claim against that attorney in the litigation that gave rise to the malpractice claim even if the two claims arise from the same or related facts and would otherwise be subject to mandatory joinder. Ibid.
The Dimitrakopouloses argue that the collection matter in this case is akin to the underlying litigation in Olds, and the limitations on the entire controversy doctrine imposed in Olds preclude the doctrine's application in this appeal. The mandatory joinder of malpractice claims in collection actions, however, does not raise the concerns that we identified in Olds when we abandoned the rule of Circle Chevrolet. It is highly improbable that in the wake of a collection complaint, a legal malpractice claim will disrupt a harmonious attorney-client relationship. See Olds, 150 N.J. at 440, 696 A.2d 633. Asserted as a counterclaim in a collection action in which the former attorney is the only other party, a malpractice claim poses little risk to client confidences. See ibid. A rule requiring such joinder is unlikely to pressure a client to forego his or her malpractice claim out of concern that he or she will antagonize trusted counsel. See id. at 440-41, 696 A.2d 633. In short, it is the rare case in which a client's litigation interests or his or her privileged communications will be imperiled if the entire controversy doctrine mandates the filing of a malpractice counterclaim in a current or former attorney's collection lawsuit.
*146 Indeed, as counsel for NJSBA noted at oral argument, clients sued by their attorneys to collect outstanding legal fees commonly assert counterclaims for malpractice in those actions. See, e.g., Puder v. Buechel, 183 N.J. 428, 430, 874 A.2d 534 (2005) (noting that the plaintiff client, sued for unpaid legal fees, asserted a counterclaim based on allegations of legal malpractice);
**113 Alpert, Goldberg, Butler, Norton & Weiss, P.C. v. Quinn, 410 N.J. Super. 510, 522-23, 542, 983 A.2d 604 (App. Div. 2009) (dismissing on summary judgment a legal malpractice counterclaim filed in response to attorney's attempt to recover unpaid legal fees); Newell v. Hudson, 376 N.J. Super. 29, 31-34, 868 A.2d 1149 (App. Div. 2005) (same); Charles A. Manganaro Consulting Eng'rs, Inc. v. Carneys Point Twp. Sewerage Auth., 344 N.J. Super. 343, 347-48, 781 A.2d 1116 (App. Div. 2001) (discussing the need for an affidavit of merit pursuant to N.J.S.A. 2A:53A-27 when a client asserts a counterclaim for malpractice in its former counsel's collection action); Glass v. Suburban Restoration Co, Inc., 317 N.J. Super. 574, 577-79, 722 A.2d 944 (App. Div. 1998) (dismissing a legal malpractice counterclaim filed in a collection action). In practice, legal malpractice counterclaims are frequently asserted as counterclaims in attorney collection actions, and litigated in tandem with those claims.
The Dimitrakopouloses rely on our decision in Higgins v. Thurber, 205 N.J. 227, 228-30, 14 A.3d 745 (2011), for the proposition that the entire controversy doctrine should not apply if the prior proceeding is a collection action. In Higgins, we declined to apply the entire controversy doctrine to bar an estate beneficiary's legal malpractice and contract claims against the estate's attorneys. Ibid. Those claims were asserted after the conclusion of an action to settle an account on an estate trust pursuant to Rule 4:87-1(a), a proceeding we described as "a formalistic proceeding, unique to probate." Id. at 229, 14 A.3d 745 ; see R. 4:87-1(a). We reasoned that because that action's "stylized format involves a line-by-line review [of] the exceptions to an accounting," and the action focuses " 'on the conduct of the executor, not the conduct of others,' " the entire controversy doctrine "is out of place" and should not apply in that setting. Higgins, 205 N.J. at 229, 14 A.3d 745 (quoting Perry v. Tuzzio, 288 N.J. Super. 223, 229, 672 A.2d 213 (App. Div. 1996) (holding that the entire controversy doctrine does not bar a claim that was not asserted in a probate action for an accounting) ).
**114 We do not concur with the Dimitrakopouloses that an attorney's collection action is analogous to the probate accounting at issue in Higgins. A collection action is not a specialized proceeding to confirm an executor's estate accounting, but rather a litigated matter in which the attorney's handling of the client's case is directly at issue. A malpractice claim is by no means out of place in such a proceeding. Higgins has no bearing on this appeal.
In sum, an attorney's collection action against his or her client is not an "underlying action" for purposes of Olds, and does not implicate the concerns that prompted us to abandon the Circle Chevrolet rule. Such an action may provide an appropriate forum for the assertion of a malpractice counterclaim.
C.
1.
That principle, however, does not end the analysis. As we have long acknowledged, "the boundaries of the entire controversy doctrine are not limitless. It remains an equitable doctrine whose application is left to judicial discretion based on the factual circumstances of individual *147 cases." Nicastro, 201 N.J. at 125, 988 A.2d 90 (quoting Oliver, 152 N.J. at 396, 705 A.2d 742 ).
Because "the polestar for the application of the [entire controversy] rule is judicial fairness," a court must apply the doctrine in accordance with equitable principles, with careful attention to the facts of a given case. K-Land Corp. No. 28 v. Landis Sewerage Auth., 173 N.J. 59, 74, 800 A.2d 861 (2002) (alteration in original) (quoting Reno Auto Sales, Inc. v. Prospect Park Sav. & Loan Ass'n, 243 N.J. Super. 624, 630, 581 A.2d 109 (App. Div. 1990) (internal quotation marks omitted) ). The doctrine's equitable nature "bar[s] its application where to do so would be unfair in the totality of the circumstances and would not promote any of its objectives, namely, the promotion of conclusive determinations, party fairness, and judicial economy and efficiency." Id. at 70, 800 A.2d 861 (emphasis omitted) (alteration in **115 original) (quoting Pressler, Current N.J. Rules, cmts. 1 & 2 on R. 4:30A (2002) ). "In considering whether application of the doctrine is fair, courts should consider fairness to the court system as a whole, as well as to all parties." Wadeer, 220 N.J. at 605, 110 A.3d 19.
In this appeal, the Dimitrakopouloses invoke two equitable principles: the rule that the entire controversy doctrine does not apply to claims that are unknown or unaccrued, see Wadeer, 220 N.J. at 606, 110 A.3d 19, and the requirement that once the claim accrued, the forum of the earlier action must have afforded a fair and reasonable opportunity to litigate the claim in order for the doctrine to apply, see Gelber, 147 N.J. at 565, 688 A.2d 1044. We consider each in turn.
2.
As we held in Circle Chevrolet and reiterated in Olds, "the determination of the accrual of a legal-malpractice claim for the purposes of imposing the entire-controversy bar is like the determination of the accrual of the bar of the statute of limitations." Olds, 150 N.J. at 436, 696 A.2d 633 (citing Circle Chevrolet, 142 N.J. at 296, 662 A.2d 509 ).[5] In both decisions, we derived our analysis from the discovery rule, the equitable principle governing statute of limitations cases that "triggers the accrual of the statute of limitations for attorney-malpractice actions." Ibid. As Judge Pressler observed, "[t]he knowledge of the existence of a cause of action which will invoke the entire controversy doctrine is the **116 same as the knowledge which will trigger the running of the statute of limitations in those cases to which the discovery rule of deferred accrual is applicable." Cafferata, 251 N.J. Super. at 260, 597 A.2d 1101.
Principles developed in cases analyzing the discovery rule therefore apply with equal force to the entire controversy doctrine. For statute of limitations purposes, a cause of action accrues "when a plaintiff knows or, through the exercise of reasonable diligence, should know of the basis for a cause of action against an identifiable *148 defendant." The Palisades at Fort Lee Condo. Ass'n, Inc. v. 100 Old Palisade, LLC, 230 N.J. 427, 447, 169 A.3d 473 (2017) (citing Caravaggio v. D'Agostini, 166 N.J. 237, 246, 765 A.2d 182 (2001) ); see also Kendall v. Hoffman-La Roche, Inc., 209 N.J. 173, 191, 36 A.3d 541 (2012) (observing, in a medical malpractice appeal, that a cause of action accrues when "the facts presented would alert a reasonable person exercising ordinary diligence that he or she was injured due to the fault of another" and that a plaintiff need not have legal advice or an expert opinion in order for his or her cause of action to accrue); Baird v. Am. Med. Optics, 155 N.J. 54, 66, 713 A.2d 1019 (1998) (same).
In the legal malpractice setting, the accrual date is not necessarily the date on which the client actually knew the facts on which the malpractice claim is based; instead, that date "is set in motion when the essential facts of the malpractice claim are reasonably discoverable." Vastano v. Algeier, 178 N.J. 230, 242, 837 A.2d 1081 (2003). For the claim to accrue, "[t]he client must sustain actual damage." Olds, 150 N.J. at 437, 696 A.2d 633 (citing Grunwald v. Bronkesh, 131 N.J. 483, 492, 621 A.2d 459 (1992) ). As we noted in Grunwald, "[l]egally cognizable damages occur when a plaintiff detrimentally relies on the negligent advice of an attorney. Actual damages are those that are real and substantial as opposed to speculative." 131 N.J. at 495, 621 A.2d 459 (citation omitted). However, the client need not have incurred all of his or her damages in order for the malpractice claim to accrue. Ibid. ("[A] client may suffer damages[ ] in the form of attorney's fees[ ]
**117 before a court has announced its decision in the underlying action. It is not necessary that all or even the greater part of the damages ... occur before the cause of action arises." (quoting United States v. Gutterman, 701 F.2d 104, 106 (9th Cir. 1983) ) ).
Our statute of limitations case law also provides guidance regarding the procedure by which a judge determines when a cause of action accrued in order to resolve an entire controversy doctrine dispute. For application of the discovery rule, the date that a cause of action accrued is determined "by the court alone and ordinarily by way of a pretrial inquiry on either affidavits, depositions or a so-called evidential Lopez hearing" conducted pursuant to Lopez v. Swyer, 62 N.J. 267, 300 A.2d 563 (1973). Pressler & Verniero, cmt. 36.2.2 on R. 4:5-4. "Obviously, however, if there is no dispute as to the facts controlling the discovery determination, a Lopez hearing is not required." Ibid.
A court charged to decide when a legal malpractice claim accrued for purposes of the entire controversy doctrine should conduct a similar inquiry, which may include an evidentiary hearing analogous to a Lopez hearing if necessary to resolve factual disputes. See Dinizo v. Butler, 315 N.J. Super. 317, 322-23, 718 A.2d 251 (App. Div. 1998) (remanding matter for an evidentiary hearing to determine when a claim accrued for purposes of the entire controversy doctrine). As in statute-of-limitations determinations, the court's careful evaluation of the facts is essential to ensure that the entire controversy doctrine is applied equitably.
3.
As we have observed, "application of the [entire controversy] doctrine requires equality of forum, that is, the first forum must have been able to provide all parties with the same full and fair opportunity to litigate the issues and with the same remedial opportunities as the second forum."
*149 Hernandez v. Region Nine Hous. Corp., 146 N.J. 645, 661, 684 A.2d 1385 (1996) (alteration in original) (quoting Perry, 288 N.J. Super. at 230, 672 A.2d 213 ); see **118 also Gelber, 147 N.J. at 565, 688 A.2d 1044 ; Cafferata, 251 N.J. Super. at 261, 597 A.2d 1101.
In that inquiry, the court's focus is whether the prior forum afforded the claimant a fair and reasonable opportunity to investigate, assert, and litigate the contested claim, after that claim accrued. Thus, in DiTrolio, we scrutinized the procedural history of the prior suit and found that the "plaintiff had ample opportunity to have fully litigated the claim in the first action; he simply chose not to." 142 N.J. at 274, 662 A.2d 494. In contrast, the Appellate Division panel deciding Cafferata concluded that the plaintiff had no meaningful opportunity to litigate a medical malpractice claim in a Special Civil Part collection action in which "[n]o judge was involved" and the proceeding "was in effect an informal expedited mediation appropriate to small claims but hardly to significant tort litigation." 251 N.J. Super. at 261, 597 A.2d 1101.
When, as here, an attorney seeks to bar a client's malpractice claim because that claim was not asserted as a counterclaim in a collection action, the court's determination of the date that the claim accrued may end the inquiry. If the client's legal malpractice claim accrued after the collection action was resolved, then the client clearly had no opportunity to assert that claim in the collection action, and the entire controversy doctrine does not preclude it. R. 4:30A.
If, however, the client's malpractice claim accrued before the collection action ended, then the court must determine whether the client would have had a fair and reasonable opportunity at that point in the collection action to assert and litigate that claim. As does the court's assessment of the timing of the malpractice claim's accrual, the question whether the forum provides a fair and reasonable opportunity to litigate the malpractice claim warrants a case-specific inquiry. The court may consider such issues as the steps required to investigate, file and prosecute the malpractice claim in that forum, the status of the collection action when the malpractice claim accrued, the time constraints imposed by the **119 rules of court, and the prospect of obtaining extensions of time to litigate the malpractice claim.
4.
In summary, the following principles derived from our case law govern the application of the entire controversy doctrine to this appeal.
First, in order for the entire controversy doctrine to bar a legal malpractice claim because that claim was not joined in a prior action, the two claims must "arise from related facts or the same transaction or series of transactions," Wadeer, 220 N.J. at 605, 110 A.3d 19 (quoting DiTrolio, 142 N.J. at 267, 662 A.2d 494 ), but need not share common legal theories, ibid.; DiTrolio, 142 N.J. at 271, 662 A.2d 494. That requirement is clearly met in this case, in which the collection and malpractice claims derive from the Borrus firm's legal representation of the Dimitrakopouloses.
Second, the entire controversy doctrine does not require a client or former client to bring a legal malpractice case in the underlying action in which the attorney represented the client. Olds, 150 N.J. at 443-44, 696 A.2d 633.
Third, an attorney's collection action against the client, in which the attorney seeks payment of legal fees incurred in the representation of the client, is not an "underlying action" within the meaning of Olds. Accordingly, a client's legal malpractice claim that is not asserted in the attorney's *150 collection action may be barred under the entire controversy doctrine.
Fourth, a court should not preclude a claim under the entire controversy doctrine if such a remedy would be unfair in the totality of the circumstances and would not promote the doctrine's objectives of conclusive determinations, party fairness, and judicial economy and efficiency. Wadeer, 220 N.J. at 605, 110 A.3d 19 ; K-Land, 173 N.J. at 70, 800 A.2d 861 ; DiTrolio, 142 N.J. at 273-74, 662 A.2d 494. A range of equitable principles may apply to a particular case. Here, the core questions are when the claim **120 accrued, and whether, given the steps required to assert and litigate the claim, the forum of the collection action then afforded the Dimitrakopouloses a fair and reasonable opportunity to litigate the legal malpractice claim.
D.
The record of this appeal, developed for purposes of a motion to dismiss for failure to state a claim under Rule 4:6-2(e), is inadequate to resolve the issues. In this appeal, the "totality of the circumstances" analysis that our case law mandates cannot be conducted based on the pleadings alone; that analysis requires further proceedings on remand.
The parties dispute the date on which the Dimitrakopouloses' malpractice claim accrued. Although they conceded before the trial court that the malpractice claim accrued when their dispute with the Eleftherious settled on September 6, 2011, the Dimitrakopouloses now maintain that their claim accrued on a later date. The Borrus firm, Fox, and Vignuolo contend that the malpractice claim accrued prior to September 6, 2011, but acknowledge that the evidence on which they rely in that regard is not in the record on appeal.
Moreover, the appellate record contains scant information about the collection action itself. We are not in a position, based on the record, to determine whether, following the accrual of their cause of action, the Dimitrakopouloses would have had a fair and reasonable opportunity to litigate their malpractice claim had they brought that claim in the collection action. The record is also inadequate for us to decide whether the Borrus firm's decision not to name Matilde Dimitrakopoulos as a defendant in the collection action affects the application of the entire controversy doctrine to this appeal.
Those issues, and any other relevant questions that the trial court identifies on remand, should be determined on an expanded record. At the trial court's discretion, it may develop that record with additional submissions from the parties, conduct an evidentiary **121 hearing similar to a Lopez hearing on the discovery rule, and consider summary judgment motions filed by the parties pursuant to Rule 4:46.
Finally, the trial court should consider on remand the Borrus firm's contention that the Dimitrakopouloses waived their right to pursue a malpractice claim, as that claim was not reached when the trial court and the Appellate Division considered the motion to dismiss.
IV.
The judgment of the Appellate Division is reversed, and the matter is remanded for further proceedings consistent with this opinion.
CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE PATTERSON'S opinion.

We summarize the factual background based on the record presented to the trial court in connection with the Rule 4:6-2(e) motion to dismiss.

The undated retainer agreement in the record was signed by Evangelos Dimitrakopoulos and by Vignuolo on behalf of the Borrus firm. The agreement was not signed by Matilde Dimitrakopoulos and does not indicate that Evangelos Dimitrakopoulos executed it on his wife's behalf. Nonetheless, it appears that the Borrus firm represented Matilde Dimitrakopoulos as well as her husband in their business dispute with Eleftheriou.

A certification purporting to comply with Rule 4:5-1(b)(2) was attached to Evangelos Dimitrakopoulos's answer in the collection matter. That certification did not conform to the language of Rule 4:5-1(b)(2), which broadly mandates disclosure of related actions and parties. Instead of stating whether "the matter in controversy is the subject of any other action pending in any court or of a pending arbitration proceeding" and "whether any other action or arbitration proceeding is contemplated," as the Rule requires, Dimitrakopoulos certified only that the matter "is not the subject matter of any other suit presently in any court or in any American Arbitration proceedings" and that he knew of "no other parties to the suit."

In Olds, we noted that malpractice claims arising from legal services in a transactional matter are unlikely to raise the same concerns as claims arising from a representation in litigation, as a transactional attorney "is not saddled with the conflicting roles of advocating on behalf of the client in the underlying litigation and representing his or her own interests as a defendant." 150 N.J. at 442, 696 A.2d 633. We observed, however, that "[t]he line between transactional and litigation representation ... is not always clear," and we declined to adopt a separate rule for the application of the entire controversy doctrine to legal malpractice claims arising from transactional matters. Ibid.

The entire controversy doctrine and the statute of limitations are distinct from one another; even if a claim is timely filed for purposes of the statute of limitations, it must be separately analyzed in accordance with Rule 4:30A. See, e.g., Vision Mortg. Corp., Inc. v. Patricia J. Chiapperini, Inc., 156 N.J. 580, 584-86, 722 A.2d 527 (1999) (addressing entire-controversy-doctrine and statute-of-limitations issues separately and concluding that neither the statute of limitations nor the entire controversy doctrine barred the plaintiff's claim); Cafferata, 251 N.J. Super. at 259, 597 A.2d 1101 (considering the applicability of the entire controversy doctrine to a claim that was filed prior to the expiration of the statute of limitations).