**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3838-23

CHRISTOPHER QUIGLEY,
individually and as a
shareholder of Safe Harbor
Financial, Inc.,

      Plaintiff-Appellant,

v.

RONALD LESICKI, DOUGLAS
SCHWARZWAELDER, SAFE
HARBOR FINANCIAL, INC.,
BRIAN FLEISCHER, ESQUIRE,
and FLEISCHER, FLEISCHER &
SUGLIA, PC,

      Defendants-Respondents.

_____

Argued September 11, 2025 – Decided October 8, 2025

Before Judges Mawla and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-0749-24.

Vincent R. Cocco argued the cause for appellant (Timoney Knox, LLP, attorneys; Vincent R. Cocco, on the briefs).

Allison L. Domowitch argued the cause for respondents Ronald Lesicki, Douglas Schwarzwaelder, and Safe Harbor Financial, Inc. (Fleischer, Fleischer & Suglia, PC, attorneys; Allison L. Domowitch, on the brief).

John L. Slimm argued the cause for respondents Brian Fleischer, and Fleischer, Fleischer & Suglia, PC (Marshall Dennehey, PC, attorneys; John L. Slimm and Jeremy J. Zacharias, on the brief).

PER CURIAM

Plaintiff Christopher Quigley appeals from two court orders entered on May 24, 2024, each dismissing his claims against defendants Ronald Lesicki, Donald Schwarzwaelder, and Safe Harbor Financial, Inc. (SHF) (collectively, SHF defendants), and defendants Brian Fleischer and Fleischer, Fleischer & Suglia, P.C. (collectively, Fleischer defendants). We affirm.

I.

Lesicki is the founder and fifty percent owner of SHF, a marketing company "working with retirement income planning solutions and specializing in annuity and life insurance." Quigley is the founder and sole owner of Safe Harbor Distribution (SHD), a Pennsylvania limited liability "distribution company for investment managers and financial advisors." In the complaint, Quigley alleged he and Lesicki planned to "blend" SHD and SHF, to "provide financial professionals [with] an integrated offering of the safety and security of

insured solutions as well [as] a traditional asset management."  In 2017, Schwarzwaelder owned 1.852% interest in SHF and twelve other share owners owned a 48.148% interest in SHF.  Quigley contacted Rennie Rodriguez to assist him in obtaining financing to purchase the 48.148% interest in SHF.[1]  Quigley asserted he neither participated in nor was involved with the financing secured by Rodriguez to purchase those interests in SHF for $433,333.33.[2]  In December 2017, Quigley and Rodriguez purchased the 48.148% interest in SHF.

Quigley claims Schwarzwaelder and Lesicki "courted" him to purchase Rodriguez's shares in SHF in January 2018.  Quigley further claims they "enticed" him to sell his interest in SHD to them.  However, Quigley lacked the necessary funds to purchase Rodriguez's interest and therefore required a loan to finance the acquisition.  Quigley asserts Lesicki and Schwarzwaelder assured him SHF had made, and would continue to make, regular distributions and dividends to its shareholders, which Quigley could then use to fulfill his obligations to Schwarzwaelder under the promissory note (Note).

---

[1]  Throughout the record, this percentage is inconsistently documented as 48.148%, 48.184%, and 48.152%.

[2]  The record reflects two slightly different amounts:  $433,333.33 and $433,333.00.

A-3838-23

In March 2018, Schwarzwaelder loaned Quigley $200,000 to purchase Rodriguez's interest in SHF. Quigley completed the sale and acquisition of Rodriguez's interest by signing five transaction documents without the benefit or representation of independent counsel. Instead, Quigley, individually and on behalf of SHD, signed five transaction documents prepared by the Fleischer defendants. The note memorialized the $200,000 loan between Quigley, Lesicki, and Schwarzwaelder, which states in relevant part: "Upon any [e]vent of [d]efault: a. The entire unpaid principal balance of this Note, together with all accrued interest, at the option of the Holder, shall become immediately due and payable, without presentation, demand or further action of any kind." The stock purchase agreement (purchase agreement) also memorialized Quigley's purchase of Rodriguez's interest.

In the pledge agreement, Quigley agreed to assign, pledge, and grant Schwarzwaelder a "first/priority security interest/lien in any and all shares, ownerships, corporate interests[,] or memberships in [SHF]." The pledge agreement further provided that in the "[e]vent of [d]efault of any of the [o]bligations or [d]ocuments," Quigley's shares may be transferred to Schwarzwaelder.

A-3838-23

Quigley provided an unconditional guarantee to ensure his timely compliance with the payment obligations set forth in the note when he signed the unconditional guaranty, suretyship, and indemnification agreement (guaranty). Quigley also signed a security agreement to secure repayment, which granted Schwarzwaelder a security interest. The agreement provided Schwarzwaelder may, "without notice, accelerate and declare immediately due and payable all [o]bligations. In addition, [Schwarzwaelder] may take immediate possession of [SHD's] [a]ccounts [r]eceivable and the collateral . . . without demand or other notice and without legal process." Quigley, however, denied that he signed the consulting and commission agreement (commission agreement), asserting his signature was "forged and/or fraudulent."

Each transaction document included a forum selection clause providing that Camden County, New Jersey would be the exclusive jurisdiction for any lawsuit arising out of, or in connection with, the purchase of SHF shares. Each document also "contain[ed] a paragraph[,] which states[,] []or similarly states[] in all capital letters and in bold type":

> FLEISCHER, FLEISCHER & SUGLIA, P.C. and BRIAN M. FLEISCHER, ESQUIRE, represent DOUGLAS SCHWARZWAELDER. The parties hereto, hereby acknowledge and agree that Brian M. Fleischer, Esquire, and Fleischer, Fleischer & Suglia are counsel to DOUGLAS SCHWARZWAELDER and

5

that they were advised by Brian M. Fleischer, that they should seek the advice of their own attorney or another attorney prior to, and in connection with, the execution of any and all agreements relating to DOUGLAS SCHWARZWAELDER or the Corporation and any other related matters.

In June 2018, Quigley acknowledged that he defaulted on the Note, claiming that he was unable to pay the monthly payments on the Note without the dividends or distribution from SHF. The next month, Schwarzwaelder, represented by the Fleischer defendants, filed a complaint in Camden County (2018 Action), alleging claims for breach of contract, fraud, and unjust enrichment related to Quigley's default under the Note and seeking among other things, transfer of the pledged SHF securities.[3] SHF was a party to this matter to direct and effectuate Quigley's SHF shares under the Pledge Agreement.

Quigley and SHD filed an answer to the complaint, but did not assert any affirmative defenses, counterclaims, or crossclaims. Thereafter, Schwarzwaelder moved for summary judgment. The unopposed motion was granted in a May 24, 2019 order, and all Quigley's SHF shares were transferred to Schwarzwaelder.

---

[3] Douglas Schwarzwaelder v. Christopher M. Quigley, Safe Harbor Distrib., LLC and Safe Harbor Fin., Inc., No. CAM-L-002691-18 (Law Div. July 30, 2018).

A-3838-23

While the 2018 Action was pending, Schwarzwaelder and Lesicki, again represented by the Fleischer defendants, filed a separate action on February 12, 2019 in Philadelphia County, Pennsylvania (2019 PA Action), which asserted individual and shareholder derivative claims for fraud and embezzlement against Quigley in connection with Schwarzwaelder and Lesicki's acquisition of shares in SHD.[4] Default was entered against Quigley. Following a proof hearing, the court entered final default judgment in the amount of $135,500 in favor of Schwarzwaelder and Lesicki on December 18, 2020. Quigley's petition to strike or open the default judgment and motion to disqualify the Fleischer firm were denied.[5]

Nearly six years after the 2018 Action and three years after the 2019 PA Action, on March 8, 2024, Quigley commenced a second action in Camden County (2024 Action), asserting claims for breach of contract related to the Note, Guaranty, and Consulting Agreement; conversion relating to the Consulting Agreement; fraud; and unjust enrichment. Both the SHF defendants

---

[4] Douglas Schwarzwaelder and Ronald Lesicki, individually and derivatively on behalf of Safe Harbor Distrib., LLC v. Christopher M. Quigley, No. 190200968 (Phila. Ct. of C.P. Feb. 12, 2019).

[5] At the time the parties submitted their briefs, a decision on Quigley's appeal was pending in the Superior Court of Pennsylvania.

A-3838-23

and Fleischer defendants moved to dismiss Quigley's complaint under Rule 4:6-2(e).

While the motions were pending, Quigley moved for leave to amend his complaint. He asserted claims of fraud in the inducement, fraud, breach of fiduciary duty of majority shareholders and oppression of minority shareholder in violation of Pennsylvania statutes and common law, and breach of fiduciary duty, against Lesicki, Schwarzwaelder, and SHF. Quigley also asserted claims of conspiracy and aiding and abetting against all defendants, as well as conspiracy to commit and aiding and abetting violations of the New Jersey Racketeer Influenced and Corrupt Organizations Act (RICO), N.J.S.A. 2C:41-1 to -6.2. Lastly, Quigley asserted a claim for unjust enrichment against Schwarzwaelder, and an alter ego/veil piercing claim against SHF.

Following oral argument, on May 24, 2024, the motion judge granted both the SHF and Fleischer defendants' motion to dismiss plaintiff's claim. In his oral decision, the judge explained:

> As long as [plaintiff] was aware of the bad conduct, or at least most of it, to provide a basis to defend the 2019 lawsuit, then he should be either collaterally estopped or somehow equitably barred from now litigating something he should have and could have litigated five years ago.

A-3838-23

The judge further explained "if [Quigley's] defenses/counterclaims had been brought up in 2019, there's no way that [the motion judge] [could] grant summary judgment." The judge found each cause of action alleged by Quigley depended upon the alleged "bad behavior" of defendants in this case; noting that Quigley's own pleadings contained numerous allegations that he would have known at that point in time. Moreover, the "underlying facts that form the basis of th[e] inferences [of a 'corrupt racketeering scheme'] were well-known in 2019." The motion judge concluded Quigley was aware of the information in 2019 concerning defendants' alleged actions, which determined whether or not he should have filed a counterclaim.

The motion judge also denied Quigley's motion to amend his complaint. Quigley is not appealing this decision.

## II.

On appeal, Quigley presents two arguments for our consideration. First, Quigley contends that the motion judge misapplied the entire controversy doctrine. Second, he asserts that the judge erred in applying the doctrine of collateral estoppel.

Having reviewed the record and considering the parties' arguments, we reject Quigley's contentions. We conclude that the motion judge properly

applied both the entire controversy doctrine and the doctrine of collateral estoppel in dismissing Quigley's complaint.

A "Rule 4:6-2(e) motion[] to dismiss for failure to state a claim upon which relief can be granted are reviewed de novo." Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 171 (2021) (citing Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 108 (2019)). Similarly, "[w]e review de novo the law guiding the trial court's determination as to the entire controversy doctrine." Francavilla v. Absolute Resols. VI, LLC, 478 N.J. Super. 171, 178 (App. Div. 2024) (citing Higgins v. Thurber, 413 N.J. Super. 1, 5-6 (App. Div. 2010)). It is an equitable doctrine left to the sound discretion of the court "based on the factual circumstances of individual cases." Bank Leumi USA v. Kloss, 243 N.J. 218, 227 (2020) (quoting Highland Lakes Country Club & Cmty. Ass'n v. Nicastro, 201 N.J. 123, 125 (2009)).

However, "[w]e 'owe[] no deference to the trial court's conclusions.'" Int'l Bhd. of Elec. Workers Loc. 400 v. Borough of Tinton Falls, 468 N.J. Super. 214, 223 (App. Div. 2021) (second alteration in original) (quoting Gonzalez v. State Apportionment Comm'n, 428 N.J. Super. 333, 349 (App. Div. 2012)). Accordingly, "an abuse of discretion standard applies to our review of the decision to apply the doctrine." Francavilla, 478 N.J. Super. at 178.

The entire controversy doctrine, codified in <u>Rule</u> 4:30A, requires joinder of claims with the goal of encouraging parties to resolve all their disputes in one action.    See <u>Dimitrakopoulos</u>, 237 N.J. at 98, 108-09.    The doctrine "encompasses not only matters actually litigated but also other aspects of a controversy that might have been litigated and thereby decided in an earlier action." <u>Francavilla</u>, 478 N.J. Super. at 179 (quoting <u>Higgins</u>, 413 N.J. Super. at 12).

The commonality of legal issues is not required.  <u>DiTrolio v. Antiles</u>, 142 N.J. 253, 271 (1995).  The primary inquiry is whether both actions "arise from related facts or the same transaction or series of transactions." <u>C.P. v. Governing Body of Jehovah's Witnesses</u>, 477 N.J. Super. 129, 139 (App. Div. 2023) (quoting <u>Dimitrakopoulos</u>, 237 N.J. at 109).  We, therefore, review the record to determine whether the separate claims are part of a "single larger controversy because they arise from interrelated facts." <u>Ibid.</u> (quoting <u>DiTrolio</u>, 142 N.J. at 271).

Both the 2018 and 2024 Actions, as well as the 2019 PA action, stem from a common factual basis that constituted a transactionally related dispute— Quigley's purchase and acquisition of his interest in SHF.  The core issue litigated in the 2018 Action was Quigley's default under both the Note and the

11

Stock Purchase Agreement. Rather than file a responsive pleading to the 2018 complaint, Quigley waited six years to commence the 2024 Action. The crux of Quigley's 2024 complaint is the allegation that defendants made misrepresentations during the negotiation for the loan and the Purchase Agreement, which he contends resulted in his default under the Note. Having reviewed the record, we conclude Quigley is precluded from asserting these transactionally related claims in the 2024 action under Rule 4:30A because he failed to raise them in the 2018 Action.

Even if we are to accept as true Quigley's claims regarding defendants' alleged RICO violations, those distinct claims are sufficiently connected because they arise from and relate to the purchase and acquisition of SHF shares. Moreover, Quigley acknowledged he was aware of all claims asserted in the 2024 Action prior to or during the pendency of the 2018 Action. Since the 2024 claims are directly related to the subject matter of the 2018 litigation, Quigley was obligated to bring those claims in that prior action. See DiTrolio, 142 N.J. at 271.

We discern no abuse of discretion in the trial court's application of the entire controversy doctrine. Plaintiff's claims, borne out of a single transaction,

are the type of legal controversy which should have been in "one litigation in only one court." Cogdell v. Hosp. Ctr. at Orange, 116 N.J. 7, 15 (1989).

We reject plaintiff's collateral estoppel arguments. Collateral estoppel is an equitable principle that provides "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." Winters v. N. Hudson Reg'l Fire & Rescue, 212 N.J. 67, 85 (2012) (alteration in original) (quoting Restatement (Second) of Judgments § 27 (A.L.I. 1982)). This concept is rooted both in equity and in judicial efficiency and prevents the duplication of lawsuits with the same issues, the same parties, and the same witnesses. See Cogdell, 116 N.J. at 17-18.

There is no question the grant of summary judgment in 2018 constituted a final judgment by a court of competent jurisdiction. The issues raised by Schwarzwaelder concerning the Note and Purchase Agreement were central to the summary judgment motion. The parties and cause of action were the same. More importantly, Quigley had the opportunity to litigate any crossclaim or counterclaims related to defendants' alleged misrepresentations and ongoing schemes to defraud him. He did not.

A-3838-23

To the extent we have not expressly addressed any other arguments raised by plaintiff, we have considered them and conclude they are without sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division