**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3276-22

ANTHONY VENTRE,
executor of the Estate of
FRANCESCO VENTRE,
and ANTHONY VENTRE,
individually,

      Plaintiffs-Appellants,

v.

ARTHUR E. BALSAMO,
ESQ.,

      Defendant-Respondent.

_____

Argued October 16, 2024 – Decided November 12, 2024

Before Judges Susswein and Perez Friscia.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-0523-23.

Kenneth S. Thyne argued the cause for appellant (Simon Law Group LLC, attorneys; Kenneth S. Thyne, of counsel and on the briefs).

Marshall D. Bilder argued the cause for respondent (Eckert Seamans Cherin & Mellott, LLC, attorneys;

Marshall D. Bilder, of counsel and on the brief; Karlee M. Martin, on the brief).

PER CURIAM

Plaintiffs Anthony Ventre, executor of the Estate of Francesco Ventre (Estate), and Anthony Ventre[1] appeal from the May 17, 2023 Law Division order granting defendant Arthur E. Balsamo, Esq.'s motion to dismiss plaintiffs' legal malpractice complaint for failure to state a claim. We affirm in part, reverse in part, and remand for further proceedings.

## I.

Anthony is the son of Francesco Ventre, who passed away on January 23, 2015. In 2002, Anthony purchased property in Ridgefield using $500,000 in funds he had borrowed from Francesco, intending to develop and sell the property. After constructing a two-family home that was financed by a separate loan from Bergen Community Bank, Anthony and his wife at the time, Carol Ventre, moved into the home to accommodate their growing family. Carol was added to the property deed. In 2010, Anthony and Carol began experiencing marital problems.

---

[1] Because the family members share the same surname, intending no disrespect, we refer to them by their first names.

In 2013, Francesco and Anthony requested Balsamo prepare a note and mortgage securing Francesco's loan on the Ridgefield property. The note, signed by both Anthony and Carol, stated in pertinent part:

> Borrower's Promise to Pay Principal and Interest. In return for a loan that I received, I promise to pay $500,000[] (called the "principal"), plus interest to the [l]ender. Interest, at a yearly rate of 6% will be charged on that part of the principal which has not been paid from the date of this [n]ote until all principal has been paid.
>
> . . . .
>
> Payments. I will pay principal and interest on demand or in the event the property secured by the mortgage which is being executed simultaneously herewith is sold <u>or in the event of a divorce of the above named mortgagors</u>.
>
> [(Emphasis added).]

In 2014, Francesco was diagnosed with a life-threatening condition, prompting him to quickly secure a last will and testament. On July 1, Francesco and Anthony met with Balsamo regarding preparation of the will. Because Francesco primarily spoke Italian and did not read or write English well, Anthony translated the conversations between Francesco and Balsamo. Francesco edited the drafted will three times before his last meeting with

3

Balsamo to finalize the will, which a third party translated. Francesco signed his last will and testament on July 9. Relevantly, article three of the will stated:

> THIRD: I do give, devise and bequeath the unpaid principal balance and accrued interest, if any, in and to a certain mortgage lien which I hold on the property known and as by the street address . . . Ridgefield, NJ unto my son Anthony Ventre. It is my wish and I direct that such debt be forgiven and the mortgage lien cancelled of record by my executor.

Notably, article three remained the same in each draft of the will. Francesco passed away predeceasing his wife, Annunziata Ventre, his daughter, Carmela Ventre, and Anthony. Thereafter, the Bergen County Surrogate's Court admitted the will to probate on October 13, 2015.

In 2018, Carol commenced a divorce action against Anthony. During the matrimonial litigation, Carol obtained a signed certification[2] from Balsamo stating he believed Francesco intended to forgive the loan entirely, which benefited both Anthony and Carol. On September 14, 2020, the Estate filed a verified complaint "for advice and direction" in the Chancery Division, Probate Part, regarding the article three language. The Estate specifically requested the probate court construe the language "to mean that [Francesco] bequeathed the unpaid principal balance and accrued interest" only to Anthony and the loan was

---

[2] The record contains only the first page of the certification.

forgiven only as to Anthony "consistent with [Francesco's] intentions." The complaint asserted "Carol . . . ha[d] advanced an interpretation of [article three] that [wa]s inconsistent with the language of the [w]ill and . . . [Francesco's] intent."

The probate court held a three-day trial beginning on May 17, 2021, during which Anthony, Carol, Carmela, and Balsamo testified. Balsamo was not represented by counsel. On July 19, the court issued an oral opinion, followed by an order on July 21, addressing Francesco's probable intent regarding article three of the will concerning Anthony's and Carol's loan and the mortgage lien on the Ridgefield property. The order "directed that the mortgage debt on the . . . property be forgiven as to both Carol and Anthony . . . in its entirety." The order further stated, "The Estate . . . is instructed that the mortgage lien on the . . . property is cancelled as against both Carol and Anthony . . . in its entirety." The probate court found Balsamo credibly testified. Balsamo relayed that a third party in his office had translated the final reading of the will before execution. The probate court determined the language in article three was ambiguous, concluding "based on [Balsamo]'s testimony . . . by a preponderance of the evidence it is more likely than not that [Francesco] wanted the entire debt forgiven and the lien cancelled."

5

The Estate appealed, and on July 8, 2022, we affirmed, holding "[t]here was nothing in the evidence direct or extrinsic that supported the contention that Francesco intended that Carol remain liable for a loan originally taken by Anthony in his own name." In re Francesco Ventre, No. A-0011-21 (App. Div. July 8, 2022) (slip op. at 18). We further noted that "Francesco directed his attorney to include in his will a provision that directed the debt be forgiven and the mortgage discharged." Ibid.

On November 17, plaintiffs filed a four-count Law Division complaint against Balsamo alleging legal malpractice, breach of fiduciary duty, negligent misrepresentation, and breach of the implied covenant of good faith and fair dealing. In lieu of an answer, Balsamo moved to dismiss plaintiffs' complaint for failure to state a claim. On May 17, 2023, following oral argument, the Law Division granted Balsamo's motion to dismiss.

The Law Division found the matter was barred under the entire controversy doctrine because plaintiffs' complaint was "based entirely on the same facts as the [probate] case which was" appealed and affirmed, and, therefore, "any claims [p]laintiff[s] may have had against [Balsamo] should have been brought against him" in the probate action. The Law Division also found the claims were barred under the doctrine of collateral estoppel because "any

facts as to [Francesco]'s intent would be the same facts underlying the claim of negligence and were necessarily resolved in the prior litigation."

On appeal, plaintiffs argue the Law Division erroneously dismissed the complaint because: all legal malpractice claims are exempt from the entire controversy doctrine pursuant to our Supreme Court's holding in Olds v. Donnelly, 150 N.J. 424 (1997); Balsamo failed to demonstrate inexcusable conduct or substantial prejudice, and therefore preclusion under the entire controversy doctrine is unwarranted; collateral estoppel does not bar the claims as the matter is distinguishable from Pivnick v. Beck, 326 N.J. Super. 474 (App. Div. 1999), aff'd, 165 N.J. 670 (2000); and the probate court made no findings as to the Estate's claims for counsel fees.[3]

## II.

We review de novo a trial court's order dismissing a complaint for failure to state a claim upon which relief can be granted pursuant to Rule 4:6-2(e). Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 171 (2021). We "search[] the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary." Printing Mart-Morristown v.

---

[3] We note the Estate was the only plaintiff in the probate action.

 A-3276-22

Sharp Elecs. Corp., 116 N.J. 739, 746 (1989) (quoting Di Cristofaro v. Laurel Grove Mem'l Park, 43 N.J. Super. 244, 252 (App. Div. 1957)). "When deciding a motion to dismiss under Rule 4:6-2(e), the test to determine 'the adequacy of a pleading' is 'whether a cause of action is "suggested" by the facts.'" Doe v. Est. of C.V.O., 477 N.J. Super. 42, 54 (App. Div. 2023) (quoting MasTec Renewables Constr. Co. v. SunLight Gen. Mercer Solar, LLC, 462 N.J. Super. 297, 309 (App. Div. 2020)), certif. denied , 257 N.J. 232, 257 N.J. 242, and 257 N.J. 259 (2024).

"[W]e assume that the allegations in the pleadings are true and afford the [pleading party] all reasonable inferences." Sparroween, LLC v. Township of W. Caldwell, 452 N.J. Super. 329, 339 (App. Div. 2017). We are not concerned with a pleading party's ability to prove its allegations. Printing Mart, 116 N.J. at 746. "Nonetheless, 'the essential facts supporting plaintiff's cause of action must be presented in order for the claim to survive; conclusory allegations are insufficient in that regard.'" AC Ocean Walk, LLC v. Am. Guarantee & Liab. Ins. Co., 256 N.J. 294, 311 (2024) (quoting Scheidt v. DRS Techs., Inc., 424 N.J. Super. 188, 193 (App. Div. 2012)). We "accord no 'special deference' to the 'trial court's interpretation of the law and the legal consequences that flow from established facts.'" Cherokee LCP Land, LLC v. City of Linden Plan. Bd.,

8

234 N.J. 403, 415-16 (2018) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

"[C]ourt[s] may consider documents specifically referenced in the complaint 'without converting the motion into one for summary judgment.'" Myska v. N.J. Mfrs. Ins. Co., 440 N.J. Super. 458, 482 (App. Div. 2015) (quoting E. Dickerson & Son, Inc. v. Ernst & Young, LLP, 361 N.J. Super. 362, 365 n.1 (App. Div. 2003), aff'd, 179 N.J. 500 (2004)). "In evaluating motions to dismiss, courts consider 'allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.'" AC Ocean Walk, LLC, 256 N.J. at 310-11 (2024) (quoting Myska, 440 N.J. Super. at 482).

To establish a prima facie case of legal malpractice, a plaintiff must prove "(1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney, (2) the breach of that duty by the defendant, and (3) proximate causation of the damages claimed by the plaintiff." Gilbert v. Stewart, 247 N.J. 421, 442 (2021) (quoting Nieves v. Off. of the Pub. Def., 241 N.J. 567, 583 (2020)). Attorneys owe their clients a duty "to provide their services with reasonable knowledge, skill, and diligence." Ziegelheim v.

9

<u>Apollo</u>, 128 N.J. 250, 260 (1992) (citing <u>St. Pius X House of Retreats v. Diocese of Camden</u>, 88 N.J. 571, 588 (1982)).

"The general rule in this State is that an attorney is only responsible for a client's loss if that loss is proximately caused by the attorney's legal malpractice." <u>Granata v. Broderick</u>, 446 N.J. Super. 449, 470 (App. Div. 2016) (quoting <u>2175 Lemoine Ave. Corp. v. Finco, Inc.</u>, 272 N.J. Super. 478, 487 (App. Div. 1994)), <u>aff'd</u>, 231 N.J. 135 (2017). To prove proximate causation, a plaintiff must establish that a defendant-attorney's breach of duty was a substantial factor in bringing about plaintiff's damages. <u>Ibid.</u> Plaintiffs therefore bear the burden of showing, by a preponderance of the competent, credible evidence, "what injuries were suffered as a proximate consequence of the attorney's breach of duty." <u>Morris Props., Inc. v. Wheeler</u>, 476 N.J. Super. 448, 460 (App. Div. 2023) (quoting <u>2175 Lemoine Ave. Corp.</u>, 272 N.J. Super. at 488).

## A. <u>Collateral Estoppel</u>

Collateral estoppel is an equitable principle that provides "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a

different claim." Winters v. N. Hudson Reg'l Fire & Rescue, 212 N.J. 67, 85 (2012) (alteration in original) (quoting Restatement (Second) of Judgments § 27 (Am. L. Inst. 1982)). The doctrine facilitates the public policy interest in "finality and repose; prevention of needless litigation; avoidance of duplication; reduction of unnecessary burdens of time and expenses; elimination of conflicts, confusion and uncertainty; and basic fairness." Ibid. (quoting Olivieri v. Y.M.F. Carpet, Inc., 186 N.J. 511, 522 (2006)).

The collateral estoppel doctrine applies if:

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.
>
> [Ibid. (quoting Olivieri, 186 N.J. at 521).]

"The doctrine will not be applied, however, where it is unfair to do so." Fama v. Yi, 359 N.J. Super. 353, 359 (App. Div. 2003).

Plaintiffs contend reversal is mandated as collateral estoppel does not bar their legal malpractice claims stemming from Balsamo's ambiguously drafted article three will provision. Plaintiffs' malpractice complaint alleged Balsamo negligently drafted the will "contrary to Francesco's intent," which resulted "in

11

an award to Carol of forgiveness of the" loan. Plaintiffs further claimed Balsamo breached his duty of care causing the "loss of the forgiveness of the mortgage debt as intended by Francesco." Because plaintiffs' legal malpractice claims partially arose from Balsamo's failure to capture Francesco's intent to forgive the loan to Anthony in article three of the will, and the probate court determined Francesco's probable intent was to forgive the loan as to Carol and Anthony, the claims related to the financial loss from the loan forgiveness interpretation in favor of Carol are precluded under the doctrine of collateral estoppel.

Plaintiffs are collaterally estopped from relitigating claims regarding Francesco's probable intent under article three, but we part ways with the Law Division's dismissal of plaintiffs' legal malpractice action in its entirety. The Law Division correctly noted in relation to Balsamo's drafting of the article three provision that the probate court" found Francesco's intent was to forgive the debt in its entirety." The probate court's decision was a final adjudication, which we affirmed. Although the parties did not litigate Balsamo's negligence in the probate proceeding, the resolution of Francesco's intent in article three of the will drafted by Balsamo was the core issue presented and is a primary focus of the legal malpractice claim. Therefore, plaintiffs are precluded from relitigating

12

the issue of Francesco's probable intent under Balsamo's drafted loan provision and damages related to the probate court's determination that the loan was forgiven as to Carol. Francesco's probable intent under the will was fully and fairly litigated to a conclusion before the probate court.

Plaintiffs' argument that this case is distinguishable from our decision in Pivnick is unavailing. In Pivnick, plaintiff filed a malpractice suit against an attorney who drafted a revocable trust, alleging the attorney negligently drafted the trust document because the decedent's intent was not captured. 326 N.J. Super. at 480-81. The Law Division dismissed plaintiff's complaint, reasoning the probate court had already adjudicated the issue of the decedent's intent. Id. at 481. We affirmed the Law Division's decision, in part because "the issues in the two proceedings were identical" and "the probate decision was affirmed by the Appellate Division." Id. at 486.

Plaintiffs contend the rationale in Pivnick does not apply to their malpractice claims because the probate court determined Francesco's will was ambiguous. We disagree. The probate court's finding that article three was ambiguous does not negate that the Estate fully litigated the specific issue of Francesco's probable intent under article three, and the probate court ultimately found Francesco intended to forgive the entire loan to Anthony and Carol. We

13

therefore discern no reason to disturb the Law Division's decision only as to the application of collateral estoppel to plaintiffs' alleged malpractice claim for Balsamo's negligence resulting "in an award to Carol of forgiveness of the" loan.

## B. Entire Controversy Doctrine

While we have determined plaintiffs are collaterally estopped from litigating Balsamo's negligence as related to Francesco's captured intent under article three and resulting damages directly related to the loan amount forgiven as to Carol, plaintiffs have a distinct claim against Balsamo for breaching the legal standard of care by drafting an ambiguous provision, which necessitated the probate action and resulting in litigation costs. Thus, we next consider whether, under the entire controversy doctrine, plaintiff's failure to certify in the probate litigation that Balsamo was a potentially liable non-party bars plaintiffs' remaining malpractice claim.

"A series of court rules implement the entire controversy doctrine in our courts." Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 109 (2019). "Taken together, both Rule 4:30A and Rule 4:5-1(b)(2) advance the same underlying purposes. As it relates to claims and to parties, they express a strong preference for achieving fairness and economy by avoiding piecemeal or duplicative litigation." Kent Motor Cars, Inc. v. Reynolds

14

& Reynolds, Co., 207 N.J. 428, 445 (2011). Rule 4:5-1(b)(2) provides "[e]ach party shall include with the first pleading a certification as to whether . . . any other action . . . is contemplated." The Rule also requires that "each party shall disclose in the certification the names of any non-party who should be joined in the action pursuant to [Rule] 4:28 or who is subject to joinder pursuant to [Rule] 4:29-1(b) because of potential liability to any party on the basis of the same transactional facts." R. 4:5-1(b)(2).

The entire controversy doctrine, codified in Rule 4:30A, requires joinder of claims with the goal of encouraging parties to resolve all their disputes in one action. See Dimitrakopoulos, 237 N.J. at 108-09. In 1998, our Court amended Rule 4:30A to restrict the scope of the entire controversy doctrine. C.P. v. Governing Body of Jehovah's Witnesses, 477 N.J. Super. 129, 140 (App. Div. 2023). The Rule's "amendment limited the reach of the [entire controversy doctrine] to non-joinder of claims, as opposed to the pre-1998 formulation of non-joinder of claims and parties." Ibid. The "[p]reclusion of a successive action against a person not a party to the first action has been abrogated except in special situations." Ibid. (quoting Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 4:30A (2024)).

15

Pursuant to Rule 4:5-1(b)(2), a trial court shall not order the ultimate sanction of dismissal for a party's failure to certify the disclosure of a non-party with potential liability in a prior action unless it determines "(1) the action is a 'successive action;' (2) the failure to provide notice of other potentially liable parties was 'inexcusable;' and (3) the undisclosed party's right to defend the successive action has been 'substantially prejudiced' by that failure." Kent Motor Cars, Inc., 207 N.J. at 440 (2011) (quoting Kent Motor Cars, Inc. v. Reynolds & Reynolds Co., 412 N.J. Super. 1, 11 (App. Div. 2010)).

Further, a court's application of the entire controversy doctrine "is fact sensitive and dependent upon the particular circumstances of a given case." 700 Highway 33 LLC v. Pollio, 421 N.J. Super. 231, 236 (App. Div. 2011); see also Dimitrakopoulos, 237 N.J. at 114. "The doctrine has three fundamental purposes: '(1) the need for complete and final disposition through the avoidance of piecemeal decisions; (2) fairness to parties to the action and those with a material interest in the action; and (3) efficiency and the avoidance of waste and the reduction of delay.'" Bank Leumi USA v. Kloss, 243 N.J. 218, 227 (2020) (quoting DiTrolio v. Antiles, 142 N.J. 253, 267 (1995)). It is well-established "[t]he entire controversy doctrine raises special concerns when invoked in the setting of legal malpractice." Dimitrakopoulos, 237 N.J. at 109.

16

We review a trial court's imposition of sanctions for failure to comply with Rule 4:5-1(b)(2) under an abuse of discretion standard. See Karpovich v. Barbarula, 150 N.J. 473, 483 (1997). "[A] trial court deciding an entire controversy dismissal motion must first determine from the competent evidence before it whether a Rule 4:5-1(b)(2) disclosure should have been made in a prior action because a non-party was subject to joinder pursuant to Rule 4:28 or Rule 4:29-1(b)." 700 Highway 33 LLC, 421 N.J. Super. at 236.

Plaintiffs contend our Supreme Court in Olds held all legal malpractice actions are exempt from the entire controversy doctrine, and, therefore, Rule 4:5-1(b)(2) disclosure requirements do not apply to known claims against an attorney non-party from the "same transactional facts." Plaintiffs maintain Rule 4:5-1(b)(2)'s disclosure requirements never apply to a party's legal malpractice claim against a non-party though the claims are related. Stated another way, plaintiffs posit all legal malpractice claims are exempt from the fundamental purposes of the entire controversy doctrine. These blanket contentions are unsupported.

In Olds, our Supreme Court held the entire controversy doctrine does not compel a plaintiff to assert a legal malpractice claim "in an underlying action that gives rise to the claim." 150 N.J. at 443. The Court reasoned, "Requiring

17

a client to notify a trial court of a potential malpractice claim relating to one transaction when the attorney or firm continues to represent the client on other matters can intrude on the attorney-client relationship." Id. at 442. Generally, a plaintiff's legal malpractice claim that arises during an attorney's representation is not barred under the entire controversy doctrine. That does not, however, dictate that a known legal malpractice claim against a non-party to an action, in which the attorney does not or has not represented a plaintiff, is exempt Rule 4:5-1(b)(2)'s disclosure requirements or the application of the entire controversy doctrine's equitable tenets.

Our Supreme Court in Karpovich addressed the dismissal of a plaintiff's legal malpractice complaint under Rule 4:5-1(b)(2) and specifically noted that in Olds, which was decided on the same day, the Court recognized the "purposes of the entire controversy doctrine are to promote a complete determination of a matter, to avoid prejudice to absent parties, and to promote judicial economy." 150 N.J. at 480 (citing Olds, 150 N.J. at 431). The Court reversed the dismissal of plaintiff's legal malpractice action as "too harsh" a sanction after it considered the specific factual circumstances surrounding the failure to disclose and the entire controversy doctrine's goals of "fairness to the parties and fairness to the system of judicial administration." Id. at 480, 483.

We conclude the Law Division erred dismissing plaintiffs' complaint with prejudice in its entirety under the entire controversy doctrine. We are constrained to reverse and remand for the Law Division to address plaintiffs' failure to comply with Rule 4:5-1(b)(2) regarding their remaining malpractice claim. There is no dispute Balsamo owed plaintiffs a duty of care. Pursuant to Rule 4:5-1(b)(2), the Law Division must consider whether plaintiffs' failure to file the required certification disclosing Balsamo was a potentially liable non-party in the probate action was inexcusable and whether Balsamo suffered substantial prejudice. See Kent Motor Cars, Inc., 207 N.J. at 445 (quoting Rule 4:5-1(b)(2)) (finding dismissal of a successive action shall not be ordered for a party's failure to comply with Rule 4:5-1(b)(2) "unless the failure of compliance was inexcusable and the right of the undisclosed party to defendant the successive action has been substantially prejudiced by not having been identified in the prior action"). The Law Division is required to address Rule 4:5-1(b)(2) in the context of plaintiffs' necessity to litigate Balsamo's alleged ambiguous provision in the probate court and the damages incurred from bringing that action.

Our Supreme Court has established that in reviewing a "violation of Rule 4:5-1(b)(2)," the trial court "must exercise its discretion and consider the

purposes of the entire controversy doctrine before barring a subsequent action." Karpovich, 150 N.J. at 483. If the Law Division factually determines disclosure was inexcusable and Balsamo suffered substantial prejudice, it is charged under the Rule to consider whether lesser sanctions than dismissal are appropriate, as there exists a "general preference for addressing disputes on the merits." Kent Motor Cars, Inc., 207 N.J. at 447. "Although the Rule specifies dismissal and imposition of litigation costs as two enforcement mechanisms, they are not the only sanctions available to the court." Id. at 445; see also R. 4:5-1(b)(2) (providing for the "dismissal of a successive action against a party whose existence was not disclosed or the imposition on the noncomplying party of litigation expenses").

The Law Division's evaluation under Rule 4:5-1(b)(2) requires a fact-sensitive detailed analysis. Detailed findings are required because it is well-recognized that "[d]ismissal is a sanction of last resort." 700 Highway 33 LLC, 421 N.J. Super. at 237; see also R. 1:7-4(a) (requiring trial courts to make sufficient "find[ings] [of] . . . fact[s] and state [their] conclusions of law"). "The trial court must state clearly its factual findings and correlate them with the relevant legal conclusions." Curtis v. Finneran, 83 N.J. 563, 570 (1980).

20

Plaintiffs also contend this successive action is permitted because Balsamo failed to demonstrate plaintiffs' actions were inexcusable. Our review of the record indicates defendants have sufficiently raised issues concerning whether plaintiffs' actions were inexcusable. Our Supreme Court has recognized parties may not "decline to reveal the existence of other parties in an effort to achieve an advantage." Kent Motor Cars, Inc., 207 N.J. at 446. The record reveals that when the Estate initiated the probate action, the legal malpractice cause of action had accrued as Anthony, the executor, acknowledged Balsamo had ambiguously drafted the article three provision. The probate complaint requested the court construe article three "consistent with [Francesco's] intentions" and to determine whether he intended to forgive the loan only as to Anthony and not Carol. The core facts alleged in each complaint concern Balsamo's drafting of Francesco's will. The Law Division must consider these facts when determining whether plaintiff's actions were inexcusable.

We recognize that Anthony and the Estate are plaintiffs, while only the Estate was a party in the probate action. Nevertheless, plaintiffs are charged with the same knowledge because Anthony was the executor and certified to the facts alleged in the probate complaint.

21

Further, plaintiffs' argument that reversal is warranted because there is no evidence Balsamo suffered substantial prejudice is also without merit. Balsamo was a central witness in the probate litigation, was not on notice of his "potential liability," and was unrepresented throughout the probate proceeding. Notably, Balsamo drafted the will in 2014, the probate trial was in 2021, and plaintiffs filed the legal malpractice complaint in 2022. Approximately three years passed between the filing of the probate action and the Law Division action, creating a delay and piecemeal litigation. Plaintiffs' failure to certify Balsamo as a non-party with a potential interest in the probate action precluded the probate court from considering joinder and Balsamo from considering intervention. We are unpersuaded by plaintiffs' contentions that the record yields no facts supporting that Balsamo suffered prejudice.

In summary, on remand, the Law Division shall specifically address under Rule 4:5-1(b)(2) whether plaintiffs' failure to disclose Balsamo as a potentially liable non-party in the probate action was inexcusable, Balsamo suffered substantial prejudice, and the adequacy of available lesser sanctions to address any discerned substantial prejudice. See 700 Highway 33 LLC, 421 N.J. Super. at 238-39; see also Kent Motor Cars, Inc., 207 N.J. at 452. The Law Division may seek expansion of the record with additional submissions from the parties

22

with greater proofs, request argument, and conduct a hearing if deemed appropriate to provide a detailed fact-sensitive detailed analysis regarding available lesser sanctions.  See Dimitrakopoulos, 237 N.J. at 120-21.

To the extent that we have not addressed plaintiffs' remaining contentions, it is because they lack sufficient merit to be discussed in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION